# WOLLMUTH MAHER & DEUTSCH LLP

500 FIFTH AVENUE

NEW YORK, NEW YORK 10110

TELEPHONE (212) 382-3300
FACSIMILE (212) 382-0050

July 20, 2010

**BY ECF AND FIRST CLASS MAIL**

Magistrate Judge E. Thomas Boyle
United States District Court
100 Federal Plaza
Central Islip, New York 11722

      Re:    J. Barrows, Inc. v. Uvino, et al.;
               Uvino v. Kaehler-Moore Architects, LLC, et al.
               Docket No. 09-03905

Dear Magistrate Judge Boyle:

      We represent Defendants, Counterclaim Plaintiffs, and Third-Party Plaintiffs Joseph Uvino and Wendy Uvino (the "Uvinos") in the above referenced matter. I write to respond to the purported discovery disputes alleged by Jeremy Platek, Esq., counsel for J. Barrows, Inc. ("JBI") in his letter to the Court dated July 15, 2010 (the "July 15, 2010 Platek Correspondence"). As the Court may recall, the Uvinos are the owners of real property located at 154 Swamp Road, East Hampton, New York (the "Premises"), and have asserted various claims arising out of the improper construction of a home and adjacent structures at the Premises, including claims as against JBI, a former construction manager at the Premises.

      As set forth in more detail below, Mr. Platek's correspondence raises numerous discovery issues which are not relevant to the claims or defenses of any party to this action. Mr. Platek's shot gun approach to discovery merely serves to waste the extremely limited resources of the Uvinos, who have been forced to file for bankruptcy reorganization as a direct result of and subsequent to the events in dispute. Mr. Platek is aware of the Uvinos' financial condition and it appears that he seeks to use that to try to avoid litigating the Uvino's highly meritorious claims.

      First, Mr. Platek's correspondence reiterates requests for: "1) Documents reflecting the names and last known addresses of any of the tenants residing at the home;[1]

---

[1] Lest there be any doubt that JBI's motion is meant to waste resources, the identity and current location of at least one of the tenants is publicly available because, as Mr. Platek knows, one tenant is in litigation with the Uvinos in a Bankruptcy Adversary Proceeding.

[and] 2) Copies of any and all leases entered into with those tenants." See July 15, 2010 Platek Correspondence at 1. In the July 15, 2010 letter, Mr. Platek has alleged that such information is "very relevant to this matter because the tenants have personally resided at the home and can attest to any problems they have experienced with the home....Clearly the tenants [sic] opinions are valuable in determining if the home was left in an 'unlivable' condition, or had the long list of problems cited by the Uvinos." See July 15, 2010 Platek Correspondence at 2.

As an initial matter, by the time any tenant took occupancy of the house on the Premises in July 2008, the Uvinos had already spent approximately nine months working to remediate the major defects found at the Premises. Invoices pertaining to such remediation have been previously produced. Accordingly, contrary to Mr. Platek's assertions, the present and former tenants of the Premises would be unable to attest to the condition of the home when JBI left the project. Moreover, whether the third-party tenants viewed the house as "livable" is irrelevant to the legal disputes in these matters, i.e. whether JBI and Mr. Barrows made misrepresentations to the Uvinos and/or breached contracts with the Uvinos.

In addition, JBI's request for any and all leases entered into with tenants residing at the Premises is wholly irrelevant because the Uvinos have not asserted any claim for damage as a result of lost rental income on the property during the time any tenant was in the occupancy of the house. As Mr. Platek knows, the Uvinos' claim derives from for the time period during which the conditions on the Premises made the house unfit for occupancy, i.e. *prior to* any rental, when they were unable to collect rental income. Mr. Platek, whether deliberately or otherwise, fails to accept the distinction.

Accordingly, the specific terms of the Uvinos' leases with their tenants have no bearing on any relief sought in this action. To the extent that the Uvinos are seeking lost rental income, they intend to prove the amount of such lost income through a real estate expert. Finally, to the extent that JBI is seeking information concerning when various tenancies began or ended, such information could be provided by other means without compelling discovery from non-parties who otherwise have no relevant information.

Second, Mr. Platek's July 15, 2010 correspondence seeks "[c]opies of any agreements of settlement reached by and between [the Uvinos] and Wood & Colors, Inc. ("Wood & Colors") with regard to any work performed at the home." See July 15, 2010 Platek Correspondence at 1. In connection with this Request, Mr. Platek wrongly alleges that the Uvinos commenced suit against Wood & Colors for inadequate work.

As Mr. Platek knows, the Uvinos never filed a suit against Wood & Colors, which was designated as defendants in this action *by JBI* solely due to their assertion of a mechanic's lien on the property. Rather, the Uvinos and Wood & Colors entered into an oral agreement whereby the Uvinos agreed to pay a compromised portion of the amounts allegedly due to Wood & Colors, in exchange for a lien release – solely as an accommodation.

2

<u>Third</u>, JBI seeks information concerning the Uvinos' "latest" credit rating. This request makes no sense, is intended to harass, and further reflects a critical misunderstanding of the Uvinos' damage claims for increased borrowing costs. First, as the Uvinos are in bankruptcy, it is clear that they currently have a poor credit rating. That, however, is not relevant in any event.

The Uvinos' claim for increased borrowing costs is based <u>solely</u> upon the differential between the rate of interest extended to them by the bank in connection with the construction loan which they held on the property (9%), as opposed to the more favorable rate of interest extended to them in connection with the permanent mortgage loan (5%), which the Uvinos were delayed in obtaining due to JBI's failure to timely obtain the Certificate of Occupancy required to obtain the permanent mortgage loan. The Uvinos' claim is in no way related to their credit worthiness, which at the time was apparently quite good, since the lender was willing to extend over $3 million in unsecured financing before taking that out with the permanent mortgage.

Mr. Platek's stated reasoning for requesting the Uvinos' credit rating, at any time, when brought to its logical conclusion simply makes no sense – that is, if the Uvinos' credit rating at the time of the permanent financing was poor, the rate on that mortgage would have been higher – thereby lessening the differential with the construction loan and decreasing damages. To the contrary, a better credit rating, and lower permanent percentage rate, would increase the damages. So, effectively, Mr. Platek is demanding discovery from the Uvinos which would, in essence, increase the damages owed by his client.

<u>Fourth</u>, JBI seeks copies of an engineer's report detailing deficiencies on the Premises. Although there was non-party deposition testimony regarding the alleged existence of such a report, the Uvinos did not commission the preparation of a report. That said, we are undertaking further investigation to determine what may exist and/or may have been the subject of testimony.

We are available to address these issues further with the Court.

Respectfully submitted,

William F. Dahill

cc: All Counsel (by First Class Mail)

3