UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
J. BARROWS, INC.,                                    :    Docket No.:    09-03905
                                                     :
                                                     :    (LDW)(ETB)
                              Plaintiff,             :
                                                     :
              -against-                              :
                                                     :
JOSEPH UVINO, et al.                                 :
                              Defendants,            :
              -and-                                  :
                                                     :
JOHN BARROWS, et al.                                 :
                                                     :
      Additional Defendants on the Counterclaims.    :
------------------------------------------------------------------------X
(See Accompanying Declarations for Full Caption)


---

**JOSEPH AND WENDY UVINOS' MEMORANDUM OF LAW
IN OPPOSITION TO HAMPTON CONTRACTING, INC.'S
MOTION FOR SUMMARY JUDGMENT**

---

Wollmuth Maher & Deutsch LLP
500 Fifth Avenue, 12th Floor
New York, New York 10110

*Attorneys for Joseph and Wendy Uvino*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 1

LEGAL ARGUMENT.................................................................................................... 4

POINT I  CONTRARY TO HAMPTON'S CHERRY PICKED FACT
CITES, THERE ARE GENUINE ISSUES OF MATERIAL FACT
PRECLUDING SUMMARY JUDGMENT ................................................5

CONCLUSION................................................................................................................9

## TABLE OF AUTHORITIES

Allied Contractors, Inc. v. United States,
    180 Ct. Cl. 1057 (1967) ...................................................................................8

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)........................................................................................4

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)........................................................................................4

Curry v. City of Syracuse,
    316 F.3d 324 (2d Cir. 2003) .........................................................................5

Gee & Jenson Eng'rs, Architects, & Planners v. United States,
    2008 U.S. Claims LEXIS 504 (Fed. Cl. Nov. 7, 2008) .................................6

Goenaga v. March of Dimes Birth Defects Foundation.,
    51 F.3d 14 (2d Cir. 1995) ..............................................................................4

Green v. Perry,
    771 A.2d 196 (Conn. App. Ct. 2001) ............................................................8

Knight v. U.S. Fire Ins. Co.,
    804 F.2d 9 (2d Cir. 1986) ..............................................................................5

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986)........................................................................................4

Miccio v. Wade Constr. Co.,
    207 A.D. 2d 599 (3d Dep't 1994).................................................................7

PCL Constr. Servs, Inc. v. United States,
    47 Fed. CL. 745 (2000)..................................................................................8

Ryan v. Feeney and Sheehan Building Co.,
    239 N.Y. 43 (N.Y. 1924) ...............................................................................7

Souther v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.),
    489 F. Supp. 2d 230 (E.D.N.Y. 2007) .......................................................4, 5

St. Paul Fire & Marine Ins. Co. v. Pearson Constr. Co.,
    547 N.E.2d 853 (Ind. 4th Dist. 1989) ..........................................................8

## Statues

Fed. R. Civ. P. 56(c) ..................................................................................................................1

Joseph and Wendy Uvino ("Uvinos") respectfully submit this Memorandum of Law in opposition to the motion for summary judgment of defendant Hampton Contracting, Inc. ("Hampton").

## PRELIMINARY STATEMENT

Hampton's motion for summary must be denied as there are genuine issues of material fact with respect to the three major areas for which it bears responsibility: (1) Hampton's failure to follow the competent industry standard to provide blocking for exterior siding, let alone to provide its services "in accordance with the highest skill and professional judgment in the construction industry," as Hampton contractually was obligated to do, (2) the undisputed testimony of one of the project architects attesting that he identified and singled out Hampton's imprecise work, which led to additional costs later for interior finishes, and (3) Hampton's installation of exterior walls significantly out of plumb, which Hampton does not even address in its motion.

## STATEMENT OF FACTS

The Uvinos are the owners of a residential property located at 154 Swamp Road in East Hampton, New York (the "Swamp Road Property" or the "Project"). <u>See</u> S.M.F. ¶ 1.[1] In connection with the construction of a home at the Swamp Road Property, the Uvinos entered into an Owner-Trade Contract with Hampton for the framing on the Project. <u>See</u> <u>id</u>. The Owner-Trade Contract provides in pertinent part that Hampton:

> warrants…the Work is free of defects not inherent in the specified materials . . . [and that Hampton] <u>shall perform all services contemplated hereunder in accordance with the highest skills and professional judgment in the construction industry.</u> The Contractor warrants to the Owner that materials, equipment, and methods used under this Contract will be of good quality and new unless

---

[1] "S.M.F." refers to Joseph and Wendy Uvinos' Response to Hampton Contracting, Inc.'s Local Rule 56.1 Statement of Material Undisputed Facts and Counterstatement of Material Undisputed Facts, dated May 2, 2011.

> otherwise specified or permitted by the Contract Documents, that the construction
> will be free from faults and defects, and that the construction will conform with
> the requirements, including substitutions not properly approved by the Owner,
> shall promptly be corrected at the Contractor's sole expense.

See S.M.F. ¶ 2 (emphasis added).

> The contract also provides:

> The Trade Contractor signifies, with their signature below, that they are familiar
> with the site, the site conditions, and the requirements of the project. The Trade
> Contractor is to submit in writing any concerns it may have regarding the
> materials and methods specified, site constraints, or any other condition that
> prohibit successful completion of Work.

See id.

Hampton breached these provisions, by among other things, (i) failing to provide horizontal blocking for the installation of vertical siding on exterior walls of the house, (ii) erecting interior framing and walls which were sloppy and imprecise, which, at a minimum contributed to massive problems in the efforts to finish the interior reveal details, and (iii) installing exterior walls which were significantly out of plumb. See S.M.F. ¶¶ 2, 3, 5.

With respect to Hampton's failure to install appropriate support for the installation of vertical siding, William Waldron, the Uvinos' expert, has provided admissible evidence that as a result of the failure to install horizontal nailers where vertical sliding was to be installed, there was not adequate support for nailing the vertical sliding, which then warped and buckled, permitting water entry, possible mold and an unattractive facade. See S.M.F. ¶ 3. To date, 60% of the siding has been replaced (the balance will be done when funds are available), which entailed removing the siding, installing horizontal nailing cleats, and then installing new siding. Id. The cost of this remediation has been in excess of $70,000 to date, and the balance will cost at least as much to complete. See id. Notably, Mr. Waldron opined that a "competent framer . . . should have known that horizontal nailers were required." See id. Moreover, Ms.

2

Kaehler, the primary architect on the project, testified that blocking was not shown on the drawings provided by KMA because it was so standard that it did not need to be included, and Ms. Kaehler also testified that the failure to install blocking in the exterior walls where vertical siding was to be placed was not good construction practice. See S.M.F. ¶ 5. Hampton also fails to address the installation brochure by the siding manufacturer, and which describes the proper procedures for providing support for the vertical siding – none of which was done by Hampton. See id.

In addition, the interior walls installed by Hampton were identified by Victor Sheptovitsky, an architect on the Project, as being installed improperly. Mr. Sheptovitsky, who viewed the walls during his frequent site visits, testified that he alerted Hampton of the problems with the installation, but Hampton continued its installation in spite of this knowledge without correction. See id. Finally, Hampton's inferior work on the job included installing an exterior wall that was 3 inches out of plumb from ground to roof (i.e. the wall was "tipping over" by 3 inches); requiring remediation costs in connection with the re-siding project. See id.

For the most part, Hampton attempts to limit its liability for its negligent work by relying on a doctrine which provides that when an owner furnishes architectural plans and specifications for a construction project, the owner bears responsibility for and impliedly warrants the correctness of those plans. See Memorandum of Law in Support of Hampton's Motion for Summary Judgment ("Hampton Mem"). However, Hampton fails to cite an equally well-recognized exception to this rule, which holds that a contractor is not excused from liability when the design defects are obvious such that a reasonable contractor should have known of the defect and either warned of it or corrected it. Moreover, this doctrine has no application at all to Hampton's "imprecise" interior framing and out-of-plumb exterior framing.

3

Hampton also cannot hide behind alleged "design defects" because the Owner-Trade Contract required it to perform in "accordance with the highest skills and professional judgment in the construction industry." See S.M.F. ¶ 2. This is further bolstered by the Trade-Contract language specifically obligating Hampton to "submit in writing any concerns it may have regarding the materials and methods specified, site constraints, or any other condition that prohibit successful completion of Work." See id. In sum, Hampton presents no basis for summary judgment to be granted in its favor on any issue.

## LEGAL ARGUMENT

Summary judgment cannot be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509, 91 L. Ed. 2d 202, 211 (1986). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. See Goenaga v. March of Dimes Birth Defects Foundation., 51 F.3d 14, 18 (2d Cir. 1995); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265, 274 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510, 91 L. Ed. 2d at 212. The Court must view the inferences from the facts in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 553 (1986). "In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are factual issues to be tried." Souther v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.), 489 F. Supp. 2d 230, 262-263

4

(E.D.N.Y. 2007)(Hon. Jack B. Weinstein)(citing Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d

Cir. 1986).  Critical is recognition of the jury's fact-finding primacy:

> It is well established that credibility assessments, choices between conflicting
> versions of the events, and the weighing of evidence are matters for the jury, not
> for the court on a motion for summary judgment. If, as to the issue on which
> summary judgment is sought, there is any evidence in the record from which a
> reasonable inference could be drawn in favor of the opposing party, summary
> judgment is improper.

In re Zyprexa Prods. Liab. Litig., 489 F. Supp. 2d at 263 (citing Curry v. City of Syracuse, 316

F.3d 324, 333 (2d Cir. 2003) (quotation marks omitted).

### POINT I

### CONTRARY TO HAMPTON'S CHERRY-PICKED FACT CITES, THERE ARE GENUINE ISSUES OF MATERIAL FACT PRECLUDING SUMMARY JUDGEMENT

Hampton's motion ignores the evidence which directly contradicts its

"arguments" as well as the substance of the claims asserted against it.  Hampton bears

responsibility for at least three major issues on the project: (i) installing an exterior wall

significantly out of plumb, (ii) sloppily installing exterior and interior walls which led to

significant and expensive interior repairs, and (iii) failure to install a proper nailing surface

within the exterior walls which led to the failure of vertical siding.  As can easily be seen below,

Hampton had no basis to make a motion as the evidence supports each of the Uvino's claims

against it and the motion should be denied.

There is no dispute that Hampton installed the exterior walls at the project.

Hampton's inferior work on the job included installing an exterior wall that was 3 inches out of

plumb from ground to roof (i.e. the wall was "tipping over" by 3 inches); which needed to be

remediated in connection with the re-siding project, requiring $ 70,000 of remediation costs.  See

S.M.F. ¶ 5.

Moreover, the interior walls installed by Hampton were identified by Ms. Kaehler's colleague, Victor Sheptovitsky, as being installed imprecisely, which led later to massive problems in the efforts to finish the interior reveal detail. See id. While Hampton tries to rely on Ms Kaehler's testimony that "she believes she was on site during framing" and "she does not recall any complaints being made to the framing contractor," see Hampton's Statement Pursuant to Rule 56.1, Hampton ignores Mr. Sheptovitsky's testimony that he was on the site more frequently than Ms. Kaehler, and his testimony that he did see the framing, he did see problems with it, and he did raise them to the framing contractor. See S.M.F. ¶ 5.

Hampton also failed to install blocking in the exterior framed walls, which has led to the need to replace all of the vertical exterior siding because it was unable to be properly fastened. See S.M.F. ¶ 3. Ms. Kaehler testified that the failure to install blocking in the exterior walls where vertical siding was to be placed was not good construction practice. See S.M.F. ¶ 5. As the Uvino' expert opined, a "competent framer...should have known that horizontal nailers were required." See S.M.F. ¶ 3.

Hampton's reliance on the framing inspection by the Town is misplaced; there is no evidence that the Town inspects for plumb walls, precision of detail or blocking for siding. See, e.g. Gee & Jenson Eng'rs, Architects, & Planners v. United States, 2008 U.S. Claims LEXIS 504 (Fed. Cl. Nov. 7, 2008) (compliance with building code does not take precedence over terms of contract). Quite simply, Hampton cannot avoid its liability for failing to perform at a competent standard, let alone "with the highest skills and professional judgment in the construction industry" by asserting that a Town inspector, checking to make sure that structure will not collapse, had viewed the work.

Finally, Hampton relies on several New York cases in support of the proposition that a construction contractor who has followed the design furnished by the other contracting party which is later found to be defective or insufficient is not responsible for any loss or damage which results. See Hampton Mem. There is no hard and fast rule, however, and a contractor is still held to a standard of care, particularly where one does not perform with the requisite skill. New York courts have so held. See, e.g., Miccio v. Wade Constr. Co., 207 A.D. 2d 599, 615 N.Y.S.2d 513 (3d Dep't 1994). In that case, the Court held that a general contractor who relied upon plans and specifications provided by the owner and architect was still bound by ordinary principles of negligence and still retained both a contractual obligation to perform all work in a "good and workmanlike manner, and [also] a duty to exercise reasonable care to reject plans and specifications [that were] patently defective." Id. at 601, 615 N.Y.S.2d at 514-515. Accordingly, the Court found that questions of fact prevented summary judgment where there was admissible evidence presented through the affidavit of plaintiff's expert that there were design defects in the contract specifications and that a reasonable and prudent contractor would not have installed or permitted the installation of the heating system so designed. Id. Under those circumstances, the Court found that "[a] trier of the fact could conclude that the plans and specifications furnished under the contract were so patently defective that an ordinary builder of ordinary prudence would be placed upon notice that the work was dangerous and likely to cause injury." Id.; see also Ryan v. Feeney and Sheehan Building Co., 239 N.Y. 43, 46, 145 N.E. 2d 321, 322 (N.Y. 1924)(builder or contractor is justified in relying upon the plans and specifications which he  has contracted to follow unless they are so apparently defective that an ordinary builder of ordinary prudence would be put upon notice that the work was dangerous and likely to cause injury.)

Other jurisdictions are in accord.  In fact, it has been held that a contractor has a duty to discover defects in the plans or specifications that are reasonably discoverable or patent and to warn the owner of the defects, even if the plans are supplied by the owner.  See PCL Constr. Servs, Inc. v. United States,  47 Fed. CL. 745, 785 (2000); St. Paul Fire & Marine Ins. Co. v. Pearson Constr. Co., 547 N.E.2d 853, 858 (Ind. 4th Dist. 1989); see also Allied Contractors, Inc. v. United States, 180 Ct. Cl. 1057, 1064-65 (1967)("[I]t is also well settled that that if a contractor knew or should have known of an obvious error in the plans or specifications, he must call attention…so that the proper steps may be taken. . . he has no right to make a useless thing and charge the customer for it.")

In Green v. Perry, the Appellate Court of Connecticut recognized that compliance with an architect's plans does not insulate a contractor from a suit where the contractor knew or should have known of deficiencies in the plans.  See 771 A.2d 196 (Conn. App. Ct. 2001). There, the owner sued the contractor after a floor in his home built by the contractor began to buckle.  Id. at 198.  The evidence revealed that, although not in the plans, the architect recommended that the contractor utilize a steel beam as part of the construction, rather than the wooden beam called for in the plans, and suggested that the contractor consult with the owner about the change.  Id. at 199.  Contrary to these recommendations, the contractor proceeded with the plans as written, and was sued by the owner when the floor began to buckle.  Id. at 198.  In denying liability, the contractor argued that because he built the home in accordance with the specified plans, he was not responsible for the inadequate support system.  Id.  The Court disagreed, finding that the builder held himself out as a skilled builder and knew or should have known that the wooden beam was inadequate based, among other things, upon his consultation with the architect.  Id. at 199.

8

As set forth in more detail above, the design professionals, as well as the Uvinos' expert, have attested to the open and obvious flaws in Hampton's framing and installations. In fact , there is evidence that Hampton was contemporaneously advised of the flaws <u>by the architect</u>, but continued its defective installation. Hampton failed to perform at a competent standard, let alone the heightened standard by which it was contractually bound. Hampton has provided no basis for a grant of  summary judgment in its favor.

### CONCLUSION

For all of the foregoing reasons and those set forth in the accompanying papers, Hampton's motion for summary judgment should be denied in its entirety.

Dated: New York, New York
     May 2, 2011

By:                            
          William F. Dahill
          Serena M. Parker

          Wollmuth Maher & Deutsch LLP
          500 Fifth Avenue, 12th Floor
          New York, New York 10110

          *Attorneys for Joseph and Wendy Uvino*