UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| J. BARROWS, INC.<br><br>                    Plaintiff,<br><br>       vs.<br><br>JOSEPH UVINO, WENDY UVINO, et al.<br><br>                  Defendants,<br><br>JOHN BARROWS, et al.<br><br>                  Additional Defendants<br>                  On the Counterclaims, | Case No. 09-CV-3905(LDW)(ETB)<br><br>ECF CASE |
| JOSEPH UVINO, WENDY UVINO, et al.<br><br>                  Third-Party Plaintiffs,<br><br>       vs.<br><br>JOHN BARROWS, et al.,<br><br>                  Third-Party Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF, J. BARROWS, INC.'S, COUNTERCLAIM DEFENDANT J. BARROWS, INC.'S AND JOHN BARROWS' MOTIONS IN LIMINE

### Evidence Submitted to the Town of East Hampton Municipal Licensing Board Should Be Precluded

The Uvinos have designated as trial exhibits (i) documents (including their Complaint, the Answer drafted by JBI's counsel and the Uvino's Power Point presentation made at the Board Hearing) submitted to the Town of East Hampton Municipal Licensing Board, (ii) that Board's determination and also (iii) designated Mark Fields, a member of that Board, as a trial witness. None of the documents nor Mr. Fields testimony is admissible as the documentation and testimony is either self-serving hearsay or irrelevant and the proceedings have no probative value. In attempting to submit this evidence, the Uvinos are attempting to subvert the fact-finding role of this jury and supplant it with that of the Board.

It is Black Letter law that self-serving statements are inadmissible hearsay. *See* Meyer v. Ford Motor Company and Kuzmack, 21 N.Y.2d 736, 234 N.E.2d 839 (1968) and Fay III v. Vargas, 67 A.D.3d 568, 888 N.Y.S.2d 405 (1st Dep't 2009). The Uvinos' Complaint to the

1

Board and their Power Point presentation are nothing more than that and must be excluded. The submission by JBI's attorney is hearsay.

The findings of that Board have no estoppel effect in subsequent proceedings. *See* Wunderlich v. Hampton Design and Const. Group, Inc., 5 A.D.3d 158, 773 N.Y.S.2d 54 (1st Dep't 2004). Moreover, the sole factual determination of that Board which underlied its holding was not that JBI breached its contract with the Uvinos (the issue before this jury) but merely that Valdespino, one of the named defendants herein, did not have a valid Home Improvement license at the time of the performance of its work. Crucially, the Board itself (as reflected in the Wunderlich decision) has requested that any of its findings not have any res judicata effect and the Uvinos effort to now bring this finding to the jury as evidence is improper and its prejudicial effect far outweighs any probative value.

Moreover, Mark Fields is a member of the Easthampton Board, and any testimony from any members of the Board regarding their findings or the hearing generally must be precluded as it is extraneous and seeks to supplement the role of the jury, the true fact finders of this case. Mr. Fields had no involvement with this project other than his role on the Easthampton Board. Accordingly, any testimony he could offer would be based on his knowledge gleaned at that hearing.

**Testimony from Anyone on behalf of Town Design Home Improvement Must be Excluded**

The Uvinos have disclosed "Town Design Home Improvement" as a witness in their "Witness List," dated September 6, 2011 (the disclosure itself is incorrectly dated 2010). Your Honor's schedule for this matter issued on February 28, 2011 required all parties to disclose final witness lists two weeks prior to trial. However, "Town Design Home Improvement" is not a person, it is a company, and therefore, not a proper witness.

F.R.C.P 26(a)(3)(A)(i) requires all pre-trial disclosures of witnesses to include the "[n]ame and, if not previously provided, the address and telephone number of each witness…" The purpose of the Rule is to prevent trial by ambush, a tactic which the Uvinos are attempting to deploy.

Here, the Uvinos have never previously disclosed anyone on behalf of Town Design Home Improvement. As a result, no depositions of any such witness was ever taken or sought. Now, the Uvinos, after three years of litigation, provide only a company name, not the identity of a person, their address or telephone number. The Court should not countenance such surprise tactics. In light of such an improper disclosure, F.R.C.P. 37(c) should act to bar the Uvinos from calling any witness from that Company.

**Parol Evidence Must Be Excluded**

The CM Agreement (enclosed herein as **Exhibit "A"** is a copy of the CM Agreement) entered into by and between the Uvinos and JBI contains the following clause at Article 6.1. "This Agreement represents the entire and integrated agreement between the Owner and the Construction Manager and supersedes all prior negotiations representations or agreements, either

written or oral. This Agreement may be amended only by written instrument signed by both the Owner and the Construction Manager."

The Uvinos in the course of this litigation, have attempted to offer various evidence that they argue reflects the parties' true understanding of the Agreement. However, given the above-contract language, efforts to do so should be precluded. See <u>Pludeman v. Northern Leasing Systems, Inc.</u>, 74 A.D.3d 420, 904 N.Y.S.2d 372 (1st Dept. 2010) ("insofar as a merger clause requires the full application of the parol evidence rule, thereby barring extrinsic evidence to vary the terms of a the trial court could conclude that any extrinsic evidence, such as the circumstances regarding each lease's execution, including any oral representations are barred, thereby precluding individualized proof.") (citations omitted); <u>Corporate Graphics, Inc. v. Mehlman Management Corp.</u>, 81 A.D.2d 767, 438 N.Y.S.2d 805 (1st Dep't 1981) ("plaintiff cannot rely on any alleged representation by the landlord that unobtrusive commercial use was a use permitted by the lease or by law. Since the written instrument contains terms different from those allegedly orally represented, and plaintiff is presumed to have read the writing, he may not claim he relied on the representations.) (citations omitted).

Efforts to offer into evidence a one-page "addendum" that is unsigned, undated and bears no initials of any of the parties must be precluded. Likewise, efforts to offer into evidence agreements concerning post-execution modifications should also be precluded.

The various obligations of the parties, as spelled out by the contract, are unambiguous and any evidence and or testimony offered by the Uvinos to broaden those obligations would be improper. The parties duties and obligations are spelled out explicitly in the contract and cannot be expanded by parole evidence.

**The Uvinos' Expert Testimony Should be Confined to the Four Corners of His Report**

In their complaint and interrogatory responses, the Uvinos identified a number of alleged defects to be the result of both design defects and construction deficiencies. However, in his 31 page report, their expert, William Waldron (enclosed herein as **Exhibit "B"** is a copy of Mr. Waldron's expert report), explicitly attributes the following defects solely to poor design by the architects:

1. Buckling of the Great Room Ceiling;
2. The cupping of the vertical siding;
3. The absence of drip caps from windows;
4. Installation of vents in the Great Room gutters;
5. The absence of a double glazed sauna door;
6. The absence of a vapor barrier in the sauna;
7. The absence of double glazing in the wine cellar;
8. The failure to coordinate the elevation of a basement window and the reflecting pool;
9. Problems with the trellises;
10. Improper elevations of the wood decks;
11. Inadequate space in the Pool House for the equipment; and,

      12.    Improper placement of compressors beneath rain scuppers.

Nowhere in his report does Mr. Waldron state that these problems arose from negligence on the part of JBI. Notwithstanding, at his deposition, Mr. Waldron proffered a new theory to assert liability as against JBI for these problems at the house. He stated that JBI was liable for these design defects because "[i]t is an industry standard [for a contractor] to ask for clarification [from the architect]." He thereafter testified that JBI's failure to do so was a contractual breach and/or negligence.

Rule 26 of the Federal Rules of Civil Procedure requires all expert witnesses to submit a written report that includes "a complete statement of all opinions the witness will express and the basis and reasons for them [and] the facts or data considered by the witness in forming them." Fed.R.Civ.P. 26(a)(2)(B). Rule 26(e) requires expert disclosures to be supplemented when the party who made the disclosure "learns that in some material respect the disclosure ... is incomplete or incorrect ...." Despite the fact that his deposition was conducted in December of 2010, Mr. Waldron's report has never been amended or supplemented and the Uvinos have never sought leave of Court to do so.

Rule 37 provides for "automatic" preclusion for failure to comply with Rule 26(a)(2)(B)'s expert report requirement:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed.R.Civ.P. 37(c)(1).

This "automatic sanction" is a "self-executing sanction," according to the 1993 Advisory Committee Notes. *See, generally* 8A Wright, Miller & Marcus, Federal Practice & Procedure: Civil 2d § 2289.1; 7 Moore's Federal Practice §§ 37.60[1]-[2].

As stated by the Courts, "[t]he purpose of the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence." DeLuca v. Bank of Tokyo–Mitsubishi UFJ, Ltd., No. 06–CV–5474 (JGK), 2008 U.S. Dist. LEXIS 25916, at *36 (S.D.N.Y. Mar. 29, 2008) (*citing* Ebewo v. Martinez, 309 F.Supp.2d 600, 607 (S.D.N.Y.2004)). "A district court has wide discretion to impose sanctions, including severe sanctions, under" Rule 37. Design Strategy, Inc. v. Davis, 469 F.3d 284, 294 (2d Cir.2006). No showing of bad faith is required before a court may preclude evidence. Id. at 296.

"Expert testimony exceeding the bounds of the expert's report is excludable pursuant to Rule 37(c)(1)." In re Kreta Shipping, S.A., 181 F.R.D. 273, 275 (S.D.N.Y.1998); *see also* Rowe Entm't, Inc. v. William Morris Agency, Inc., 98–CV–8272 (RPP), 2003 U.S. Dist. LEXIS 17623, at *5 n. 3 (S.D.N.Y. Oct. 2, 2003) (confining testimony from expert to opinions set forth in his expert report). The "duty to disclose information concerning expert testimony is intended to allow opposing parties to have a reasonable opportunity [to] prepare for effective cross

4

examination and, perhaps, arrange for expert testimony from other witnesses." Lamarca v. United States, 31 F.Supp.2d 110, 122 (E.D.N.Y.1999) (*citation and internal quotation marks omitted*). Here, the assertion by Mr. Waldron that JBI should be held accountable for these design defects is non-sensical in the "absence of the logic filling gap" offered at his deposition that industry standard requires a Construction Manager to question an architect's design drawings. Allowing him to now proffer this opinion, when his report fails to contain it, "would eviscerate the purpose of the expert disclosure rules. " Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., 769 F.Supp.2d 269, 279 (S.D.N.Y.2011) (*quoting* United States v. City of N.Y., 637 F.Supp.2d 77, 107 (E.D.N.Y.2009)); *see also* Silivanch v. Celebrity Cruises, Inc., 171 F.Supp.2d 241, 256 (S.D.N.Y.2001) (precluding expert testimony that was not disclosed during expert discovery).

He should be precluded from doing so.

**Mr. Waldron Should be Precluded from Testifying As To Damages Liability because he Fails to Allocate Responsibility between the Architect and JBI**

Mr. Waldron further offers opinions in his report regarding numerous defects that were both the responsibility of KMA as the architects and JBI as the construction manager, among other contractors at times. However, he fails apportion the responsibility between the various parties that he alleges to be responsible for the specific defects. Following the provision of his report and his deposition testimony, Mr. Waldron has never provided an opinion by way of a supplemental report or in any other manner, allocating the responsibility. Therefore, he cannot now provide any testimony allocating responsibility between the architect and JBI.

Moreover, even if Mr. Waldron were now allowed to offer this belated opinion, it should still be excluded. Under Rule 702, an expert's testimony is admissible if it will assist the trier of fact and is (1) "based upon sufficient facts or data"; (2) "the product of reliable principles and methods"; and (3) "the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702. "In assessing the reliability of expert testimony, the trial court must decide not only whether an expert's methodology is reliable for some purposes, but whether it is a reliable way 'to draw a conclusion regarding the particular matter to which the expert testimony was directly relevant.' " R.F.M.A. S., Inc. v. So, 748 F.Supp.2d 244, 248 (S.D.N.Y.2010) (*quoting* Kumho Tire Co. v. Carmichael, 526 U.S. 137, 154, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).

A damages report that fails to allocate damages among different defendants may be inadmissible because it is not a reliable way to draw a conclusion regarding damages in a multi-defendant case. *See, e.g.*, R.F.M.A. S., 748 F.Supp.2d at 267–68 ("[I]f the testimony of plaintiff's putative damages experts were admissible, it would be of limited utility. [The experts] were not asked to (and did not) distinguish between the liability of ... [the various] defendants or separate the harms flowing from each assumed legal violation.... They concluded only that 'defendants' actions,' collectively, caused the deterioration of plaintiff's relationship with Neiman Marcus. Thus, their testimony, if admissible, would be helpful to determining damages only if all defendants were found jointly and severally liable on every cause of action alleged.")

5

Here, the Uvinos' failure to allocate responsibility between parties for the alleged construction defects requires the preclusion of Mr. Waldron's opinions as to damages.

**Testimony and/or Evidence from the Uvinos Regarding Delay Should be Precluded**

The Uvinos have alleged that they have been damaged as a result of delays in the project. Their expert, Mr. Waldron failed to delineate what aspects of the delay were attributable to KMA and what aspects were attributable to JBI. Accordingly, any testimony proffered to attribute total delays in the project to one specific party is inadmissible.

Generally, where there are simultaneous or overlapping delays on a project due to multiple parties (sometimes referred to as "concurrent delays"), such delays are not compensable. As stated in Manshul Constr. Corp. v. DASNY, 79 A.D.2d 383 (1st Dept. 1981):

> When claims are made for damages for delay, plaintiff must show that defendant was responsible for the delay; that these delays caused delay in completion of the contract (eliminating overlapping or duplication of delays); that the plaintiff suffered damages as a result of these delays, and plaintiff must furnish some rational basis for the court to estimate those damages, although obviously a precise measure is neither possible nor required.

Id. at 387 (other citations omitted).

Here, the Uvinos attempt, per Mr. Waldron's analysis, to use a modified total cost/total time method to assess delay damages against JBI is particularly inappropriate where he has alleged delays attributable to both KMA and JBI and fails to delineate as between the two.

As such, any testimony proffered regarding delay should be excluded.

Moreover, as discussed above, his failure to allocate percentages of liability for the alleged delay as between KMA and JBI is also fatal to the analysis. "An owner is not entitled to damages where he or she is the one responsible for the delays in completion, such as where the delays are caused … by the delays of another contractor in supplying material, and by the ordering of new work not contemplated by the original contract." See Fredlund v. De Rosa, 309 A.D.2d 1287 (4th Dep't 2003) and Smith v. Vail, 53 A.D. 628 (1st Dep't 1900), aff'd, 166 N.Y. 611 (1901).

Here, there are numerous causes for the delays including the Uvinos decision during the course of the construction to make changes to finishes and design. As the Uvinos' own expert Mr. Waldron was unable to allocate the alleged delays between KMA, JBI, trade contractors or the Uvinos themselves, he cannot now proffer such opinion and, accordingly, it must be precluded.

6

### The Uvinos Should be Precluded from Offering Evidence Regarding Delays As They Were not Contemplated in the Construction Management Agreement

The Uvinos allege they have been damaged as a result of delays in that, among other things, it caused a loss of rental income on the property and an inability to lock in a lower interest rate on their mortgage. However, an owner cannot recover damages for alleged delays in completion where they were not contemplated at the time the agreement was reached for the construction. Here, there is no clause in the Agreement reached between JBI and the Uvinos which placed a time limitation on the project's length or provided for damages emanating from any delays caused by either party. In fact, the Construction Management Agreement contemplated a possible delay of the project beyond the projected timeframe as it required an additional payment of $14,300 to JBI for each additional month the project continued.

Moreover, there is no evidence that at the time the contract was entered into, JBI was aware that the Uvinos were planning on renting the property or refinancing it. For that reason, any evidence that the Uvinos have been damaged due to their inability to rent the property or obtain favorable financing should be excluded. *See* Wasilewski v. Dalton School, Inc., 180 A.D.2d 561 (1st Dep't 1992) (delay damage evidence properly exclude since it was "clear that the alleged delay damages could not have been reasonably foreseen or contemplated by plaintiff at the time the contract was entered into. Indeed, there was never any specific time of performance agreed to by the parties during negotiations.")

Accordingly, since the contract did not contemplate delay damages, evidence regarding the Uvinos' delay damages should be precluded.

### The Uvinos' Alleged Damages for Remedial Repairs Not Yet Undertaken Must be Excluded Since they are Speculative and Unsupported by Probative Evidence

The Uvinos have alleged $652,700 in future remediation costs as detailed in a two page document entitled "III Remediation of Defects." However, that estimate is merely a number generated by the Uvinos with no evidentiary support.

Ms. Uvino testified that she generated the list "in consultation with Don Moore, Joe Uvino, or looking at what we spent to do some of the initial work." Don Moore, in fact testified that he was not aware whether his company or someone else created the document and indicated the dollar amounts contained therein were a "rough estimate." When questioned extensively about each specific figure, he was unable to testify as to how any of them were reached.

Ms. Uvino further testified that she did not even have any back-up documentation to support any of the figures.

Even if Ms. Uvino were an expert in construction, which she is not, her attempt to calculate the amount of damages for work that has yet to be performed, would be inadmissible. "A damage figure in an expert report cannot satisfy Rule 26(a)(B)(2) simply by stating a conclusory figure and them attaching documents that purportedly support that figure. Rather, the report must supply actual calculations with detailed and complete information elucidating how

7

the expert arrived at the damage figure." <u>Great White Bear, LLC v. Mervyns, LLC</u>, No. 06 Civ. 13358, 2008 WL 2220662, at *3 (S.D.N.Y. May 27, 2008).

Furthermore, the damages are based entirely upon hearsay and should be barred for that reason as well. Fed. R. Evid. 801; *see also* <u>U.S. v. Dukagjini</u>, 326 F.3d 45, 58 (2nd Cir. 2003) (an expert is permitted to disclose hearsay for the limited purpose of explaining the basis for his expert opinion, but not as general proof of the truth of the underlying matter).

Dated: White Plains, New York
September 15, 2011

Sincerely yours,

**O'CONNOR REDD LLP**

_____/s/_____
By:   Alak Shah
Attorney for Counterclaim Defendant
J. BARROWS, INC.
200 Mamaroneck Avenue
White Plains, New York 10601
Ph:   (914)686-1700
Fax:  (914)328-3184

**DREIFUSS BONACCI & PARKER, LLP**

_____/s/_____
By:   Eli Rogers
Attorneys for Plaintiff J. BARROWS, INC and Defendant JOHN BARROWS
26 Columbia Turnpike, North Entrance
Florham Park, New Jersey 07932
Ph:   (973)514-1414
Fax:  (973)514-5959

Enc.: Exhibit "A" – CM Agreement
      Exhibit "B" – William Waldron's Expert Report

Wollmuth, Maher & Deutsch, LLP
Attorneys for Uvinos
500 Fifth Ave., Suite 1200
New York, New York 10110
Attn: William Dahill, Esq.
Ph:   (212)383-3300
Fax:  (212)382-005

David Lee Heller, Esq.
Attorney for Wood & Colors, Inc.
3334 Noyac Road
Sag Harbor, New York 11963
Ph:     (631)725-6340
Fax:    (631)725-6342

Rabinowitz & Galina, Esq.
Attorneys for Pools & Guillo, Inc.
94 Willis Avenue
Mineloa, New York 11501
Ph:     (516)739-8222
Fax:    (516)739-8225

Marshall M. Stern, Esq.
Attorneys for Valdespino Custom Builders &
J.L. Masonry & Construction, Inc.
17 Cardiff Court
Huntington Sta., New York 11746
Ph:     (631)427-0101
Fax:    (631)427-0196

Michael T. Sucher, Esq.
Attorneys for F. Schneider Contracting
26 Court St., Suite 2312
Brooklyn, New York 11242
Ph:     (718)522-1995
Fax:    (718)797-3174

Morris Duffy Alonso & Faley
Attorneys for Hampton Contracting
2 Rector Street, 22nd Floor
New York, New York 10006
Attn:   Mark Healy, Esq.
Ph:     (212)766-1888
Fax:    (212)766-3252