**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| J. BARROWS, INC. | Case No. 09-CV-3905(LDW)(ETB) |
|           Plaintiff, | |
| vs. | |
| JOSEPH UVINO, WENDY UVINO, et al. | **ECF CASE** |
|           Defendants, | |
| JOHN BARROWS, et al. | |
|           Additional Defendants | |
|           On the Counterclaims, | |
| JOSEPH UVINO, WENDY UVINO, et al. | |
|           Third-Party Plaintiffs, | |
| vs. | |
| JOHN BARROWS, et al., | |
|           Third-Party Defendant. | |

## J. BARROWS, INC. AND JOHN BARROWS' MEMORANDUM OF LAW IN OPPOSITION TO HARLEYSVILLE WORCESTER INSURANCE COMPANY'S MOTION TO INTERVENE

# TABLE OF CONTENTS

Harleysville's Motion is Untimely .................................................................................. 2

JBI Will be Prejudiced by Harleysville's Intervention ........................................... 4

   A.   Harleysville's Intervention Will Shift the Burden of Proof to
       Counterclaim Defendant JBI ...................................................................... 5

   B.   Harleysville's Intervention Would Sow Jury Confusion ........................... 9

There is No Prejudice to Harleysville ........................................................................ 11

   Harleysville's Motion is Procedurally Defective ................................................... 12

## TABLE OF AUTHORITIES

**Cases**

Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171 (2nd Cir. 2001)............................ 4

Catanzano by Catanzano v. Wing, 103 F.3d 223 (2nd Cir. 1996)......................................... 4

Fidelity Bankers Life Ins. Co. v. Wedco, Inc., 102 F.R.D. 41 (D.C.Nev.,1984)................. 10

Gagnon v. Ball, 696 F.2d 17 (2d Cir.1982) ............................................................................ 7

H.L. Hayden Co. of New York, Inc. v. State of New York, 797 F.2d 85
    (2nd Cir. 1986). ................................................................................................................ 10

High Plains Co-op Assoc. v. Mel Jarvis Constr. Co., Inc., 137 F.R.D. 285
    (D. Neb. 1991) .......................................................................................................... 9, 14

Hoblock v. Albany County Bd. of Elections, 233 F.R.D. 95 (N.D.N.Y. 2005) ................... 13

Hunter v. Peters, 2001 WL 34093937, 31 Conn. L. Rptr. 141 (New Haven Conn.
    Superior Ct.  2001).............................................................................................................. 7

In re Adelphia Communications Corp., 452 B.R. 484 (S.D.N.Y. 2011) ............................. 11

In re Auction Houses Antitrust Litig., 00–CV–648, 2000 WL 1864036,
    (S.D.N.Y. Dec. 20, 2000). ................................................................................................ 12

In re Nat'l Eastern Corp., 391 B.R. 663 (D.Conn. 2008)..................................................... 14

In re: Bank of New York Deriv. Litig., 320 F.3d 291 (2nd Cir. 2003) ..................................... 2

Marriott v. County of Montgomery, 227 F.R.D. 159 (N.D.N.Y. 2005) ............................... 13

Oneida Indian Nation of Wisconsin v. New York, 102 F.R.D. 445 (N.D.N.Y.1983)........... 8

Plough, Inc. v. Int'l Flavors & Fragrances, Inc., 96 FRD 136 (W.D. Tenn. 1982)............ 10

Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.,
    725 F.2d 871 (2nd Cir. 1984) ...................................................................................... 8, 12

Sackman v. Liggett Grp., Inc., 167 F.R.D. 6 (E.D.N.Y.1996)............................................... 5

Thomas v. Henderson, 297 F.Supp.2d 1311 (S.D. Ala. 2003) ............................................ 9

Travelers Indem. Co. v. Dingwell, 884 F.2d 629 (1st Cir. 1989) ........................................... 4

U.S. Postal Serv. v. Brennan, 579 F.2d 188 (2nd Cir. 1978) ............................................. 1, 2

U.S. v. City of New York, 179 F.R.D. 373 (E.D.N.Y.1998) .................................................... 5

United States v. Pitney Bowes, Inc., 25 F.3d 66 (2nd Cir. 1994)........................................... 2

United States v. Quattrone, 441 F.3d 153 (2nd Cir. 2006). ................................................. 11

This memorandum of law is submitted by plaintiff J. Barrows, Inc. and counterclaim defendant John Barrows (hereinafter collectively referred to as "JBI")[1] in opposition to Harleysville Worcester Insurance Company's ("Harleysville") motion to intervene.  Harleysville's request should be denied.  Rule 24(b)(2) states that "[o]n a timely motion, the court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact."

Harleysville's motion (on a case that it has been monitoring for years) fails to meet the Rule's initial requirement, timeliness, having been brought on the eve of trial long after Pre Trial submissions had been served.

The decision to grant permissive intervention is "wholly discretionary with the trial court." U.S. Postal Serv. v. Brennan, 579 F.2d 188, 191 (2nd Cir. 1978).  Further, Rule 24(b)(3) directs that "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

Harleysville's motion should also be denied because it will prejudice JBI.  It would shift the burden of proof to JBI in defending the counterclaim, a burden that would ordinarily rest with the counterclaim plaintiffs the Uvinos.  Moreover, given the untimeliness of the motion, brought long after submissions of the trial evidence, that prejudice is only magnified by the fact that JBI has not prepared the evidence to meet that shifted burden of proof.  Finally, because no party involved in the actual trial will be introducing evidence directed specifically to the proposed questions, or addressing

---

[1] As this Court is aware, JBI has moved to disqualify the firm of O'Connor Redd as JBI's counsel on the counterclaim.  In theory, Harleysville's intervention affects only that counterclaim.  However, because of that conflict, and O'Connor Redd's failure to date to consult with Mr. Barrows regarding his position on this motion, this opposition is being submitted by the plaintiff JBI and Mr. Barrows.

them in opening and closing, presenting these questions to the jury in a vacuum will likely lead to jury confusion and an unjust adjudication of the claim.

The trial court's discretion to deny permissive intervention is "very broad" and the Second Circuit employs a "clear abuse of discretion" standard of review. Brennan, supra, at 192. This Court should, in its broad discretion, deny Harleysville's request.

**Harleysville's Motion is Untimely**

Timeliness under Rule 24(b) is a "threshold requirement" for intervention. United States v. Pitney Bowes, Inc., 25 F.3d 66, 74 (2nd Cir. 1994). The Second Circuit takes the following circumstances into consideration when determining whether an application to intervene is timely: "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." In re: Bank of New York Deriv. Litig., 320 F.3d 291, 300 (2nd Cir. 2003) (citations omitted).

- Harleysville states, in conclusory fashion, that its motion is timely. A brief review of the chronology of events reveals that it is not.

- On or about April 14, 2008, the Uvinos filed their counterclaim against JBI. (See Exhibit B to Harleysville's motion).

- On June 30, 2008, Harleysville issued its Reservation of Rights letter (see Exhibit E to Harleysville's motion), and since that time, was monitoring all aspects of the case through status reports issued by its panel counsel.

- On September 10, 2009 the case was removed to this Court.  (See Exhibit B to the Affirmation of Jeremy D. Platek submitted in opposition to Harleysville's motion (hereinafter the "Platek Aff."))

- On December 3, 2010, the second day of deposition of the Uvino's expert, William Waldon, was conducted.   That was the final deposition taken in the matter. (See Platek Aff. at para. 3)

- On December 16, 2010, discovery was certified as complete and the case was trial ready.  (See Exhibit B to Platek Aff.)

- On March 7, 2011, this Court Ordered jury selection to commence on September 19, 2011.  (See Exhibit B to Platek Aff.)

- Seven (7) months later, on September 14, 2011 (five days before scheduled jury selection), Harleysville submitted its letter request for leave to move to intervene.  (See Exhibit H to Harleysville's motion)

- On September 20, 2011, after this Court declared a mistrial, Harleysville's request for leave to move was granted.  (See Platek Aff. at para. 5)

- Forty-three (43) days later, on November 2, 2011, Harleysville finally served its motion, nearly three and a half years following its reservation of rights, eleven (11) months after discovery in the matter was closed, nine (9) months after the case was scheduled for trial, and nearly two (2) months following the first scheduled trial date.

Under no circumstance can Harleysville's conclusory assertion that its motion is timely be taken at face value.  It clearly had "notice of its interest" since, at least,

3

December 2010 when discovery was complete in this matter. Despite that fact, it did not seek intervention until September of 2011.

The fact that a proposed intervenor "knew or should have known for many months" that it had an interest in a litigation and only sought intervention on the eve of trial, as Harleysville did here, can serve as a basis for the Court to exercise its discretion and deny intervention. See Catanzano by Catanzano v. Wing, 103 F.3d 223, 231 (2nd Cir. 1996).

Moreover, in determining whether an insurer has a right to permissive intervention, the Courts have considered "whether the declaratory judgment action was filed in good faith at the earliest possible time." Travelers Indem. Co. v. Dingwell, 884 F.2d 629 (1st Cir. 1989). Here, despite the issuance of a reservation of rights in 2008, and the close of discovery in December of 2010, no declaratory action has been served as of this date (while Harleysville makes reference to a declaratory action Complaint, it does not bother to attach it to its motion).

While not a controlling factor "the length of delay is an important factor." Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 181 (2nd Cir. 2001). To further exacerbate matters, Harleysville waited nearly seven weeks to brief this issue after having been granted leave to do so, despite the pendency of a trial.

It is clear that Harleysville's request does not meet the Rule's timeliness requirement.

**JBI Will be Prejudiced by Harleysville's Intervention**

The "principal consideration" governing the exercise of permissive intervention is "whether the intervention will unduly delay or prejudice the adjudication of the rights of

the original parties." U.S. v. City of New York, 179 F.R.D. 373, 381 (E.D.N.Y.1998) (citing Sackman v. Liggett Grp., Inc., 167 F.R.D. 6 (E.D.N.Y.1996)).

Here, because Harleysville's intervention would both shift the burden of proof to JBI after it has already prepared the evidence for trial, and also lead to jury confusion, JBI's defense of the counterclaim will be prejudiced and the adjudication of this matter will be affected unjustly.

### A. Harleysville's Intervention Will Shift the Burden of Proof to Counterclaim Defendant JBI

Harleysville seeks to intervene in order to have the jury allocate damages as between "damages to repair and replace [JBI's] work . . . and on the other hand damages that Barrows caused to property that was not its work or product" (Harleysville Memorandum of Law at page 10)  Harleysville's effort to now have these questions adjudicated by a jury places a burden on JBI that it would not have otherwise had in this litigation.  The prejudice has been compounded by Harleysville's delay in bringing this motion long after witness lists and exhibit lists were exchanged.

The Uvinos, and their expert, have failed to allocate liability as between the various counterclaim and additional defendants in this matter.  That was their burden to do.  Harleysville's intervention would force JBI, a counterclaim defendant to do so.  That shift of the burden of proof here is improper and prejudicial.

A review of the counterclaim asserted by the Uvinos against JBI (attached as Exhibit B to Harleysville's motion, hereinafter referred to as the "Uvino Counterclaim") reveals that many of the allegations made against JBI directly overlap with the allegations that the Uvinos have made against other trade contractors.  The Uvino Counterclaim itself is alleged against "Plaintiff [JBI] and the Additional Defendants

[Valdespino Custom Builders, Inc., JL Masonry & Construction, Inc., F. Schneider Contracting Corp. and Hampton Contracting, Inc.] and a cross-claim against Pools by Paul Guillo, Inc." (See Uvino Counterclaim at page 4 of their Answer) All of the allegations made in the Uvino Counterclaim are alleged against all of those trade contractors. The Uvinos specifically allege that "work was performed on the Premises by Barrows, JBI's employees and TCs [Trade Contractors] in a negligent manner . . . . (Uvino Counterclaim at para. 32) No differentiation is made by the Uvinos between any of the trades in that allegation.

But the Uvinos lumping of claims does not end there. The Uvinos also brought a separate action against JBI, John Barrows and Kaehler Moore Architects, LLC ("KMA") (that Complaint, attached to the Platek Affidavit as Exhibit C, is hereinafter referred to as the "Uvino Complaint").

A comparison of the Uvino Counterclaim and the Uvino Complaint reveals that every instance of alleged damage that the Uvinos claim was caused by JBI's negligence in the Uvino Counterclaim is mimicked in the Uvino Complaint as having been caused by the faulty designs of the architect and by KMA's failure to properly supervise construction.

While Harelysville notes that the Uvino's expert report seeks damages against JBI for "work performed or overseen" by JBI (see Harleysville Memorandum of Law at page 9) what Harleysville fails to note is that the Uvino's expert, William Waldron, lumps all of the damages together (much as the Uvinos do) and asserts that both JBI and KMA are jointly responsible for them. (The Waldron report is attached to Harleysville's motion as Exhibit B).

In his report, Mr. Waldron states, in his summary of opinions that "the architect [KMA] and the construction manager [JBI] failed to meet and adhere to construction industry standards in the form of cost overruns and delays . . . ." (Waldron Report at page 3). Mr. Waldron also alleges that the architect failed in their duties of construction observation (Waldron Report at pages 7-8) and that JBI failed in its "supervision." (Waldron Report at page 9) In point of fact, in Section X of his report (beginning at page 14) Mr. Waldron repeatedly refers to many of the damages having been suffered by the Uvinos as having occurred as a result of "design and installation flaws."

Despite the fact that Mr. Waldron asserts blame to both JBI and KMA for numerous failures, he fails to allocate percentage of fault as between the allegedly culpable parties for these damages.

One of the defenses available at trial to JBI is to simply argue that the Uvinos failed to meet their burden of proof on the issue. *See* Gagnon v. Ball, 696 F.2d 17, 19 n. 2 (2d Cir.1982) (allocation may be required where the liability of a defendant is limited to acts that inflict only a portion of the damages).

To impose this burden of proof on JBI in defending the counterclaim requires the denial of Harleysville's motion. That very concern was highlighted by the Court in Hunter v. Peters, 2001 WL 34093937, 31 Conn. L. Rptr. 141 (New Haven Conn. Superior Ct. 2001) (applying Connecticut law) where it said that the insurer's "proposed intervention here is not a risk-free endeavor. The jury's job is to determine whether the plaintiff has satisfied his burden of proof on the asserted causes of action. Eagle's proposed interrogatories will provide a distraction from that task." Here too, Harleysville's intervention would shift the burden and distract the jury.

While Harleysville correctly notes that the Second Circuit, in <u>Restor-A-Dent</u> <u>Dental Laboratories, Inc. v. Certified Alloy Products, Inc.</u>, 725 F.2d 871 (2nd Cir. 1984), posits that intervention may be appropriate, that decision shows why here it would be inappropriate.

In <u>Restor-A-Dent</u>, the Second Circuit upheld the District Court's denial of the insurer's motion to intervene.  The District Court's denial "was based on the tardiness of Unigard's motion and the burden that the judge thought intervention would place on Restor-A-Dent." <u>Id.</u> at 873.   In affirming, the Second Circuit stated that had timeliness been the only concern, it would not have affirmed because the parties had already "prepared the evidence referred to by the judge", and, as such, there was no resultant prejudice. <u>Id.</u> at 876.[2]

Here, Harleysville acknowledges that no party in this action, other than Harleysville has an interest in ascertaining the factual findings it would seek from its interrogatories.  To place that evidentiary burden on JBI at this late stage of the litigation would place it in a position of having to "prepare the evidence" that it would not need to otherwise.  The <u>Restor-A-Dent</u> decision makes clear that forcing a party to "prepare evidence" that it otherwise would not have in the absence of intervention amounts to prejudice requiring denial of the motion.

Denial is also warranted since shifting the burden of proof to JBI complicates its defense.  *See* <u>Oneida Indian Nation of Wisconsin v. New York</u>, 102 F.R.D. 445, 449 (N.D.N.Y.1983) (intervention denied where it "may promote judicial economy ... but at the expense of rendering the single lawsuit more complex and protracted").

---

[2] The Second Circuit ultimately held that the Court did not abuse its discretion because, among other reasons, the prejudice to the carrier was not great (an issue discussed below), the intervention would exacerbate the conflict that defendant's panel counsel had in the case and it might hamper and delay settlement negotiations. <u>Id.</u> at 877.

Harleysville cites Thomas v. Henderson, 297 F.Supp.2d 1311 (S.D. Ala. 2003), in support of its request.  That case is inapposite because in Thomas, unlike here, the insureds failed to object to intervention by their carrier.  Thomas, supra at 1324.  The court in Thomas interpreted this failure to object as a "telling" justification for permitting intervention.  Id.  That failure to oppose may well have been the result of afflicting the insurer-provided defense counsel.  The exacerbation of a conflict has served as the basis for denial of a carrier's intervention.  See  High Plains Co-op Assoc. v. Mel Jarvis Constr. Co., Inc., 137 F.R.D. 285, 290-91 (D. Neb. 1991).[3]

Given that the Uvinos have failed to allocate liability as between the counterclaim and additional defendants, forcing JBI, a counterclaim defendant to do so to meet Harleysville's request would be unfair and prejudicial.

### B. Harleysville's Intervention Would Sow Jury Confusion

Harleysville, in seeking to interject itself into this litigation, argues that the jury "in order to determine the quantum of damages . . . must evaluate evidence concerning the various damages Uvinos allegedly suffered.  In so doing, the jury will review the precise information necessary to apportion damages."  (See Harleysville's Memorandum of Law at page 10)

However, Harleysville does not posit which party will do so.  It is clear that the Uvinos have not done so.  Harleysville does not seek to participate in the action. Harleysville has also represented to the Court (in correspondence sent in opposition to JBI's request for leave to move to disqualify O'Connor Redd) that its panel counsel,

---

[3]Even if the Court were to deny Harleysville's motion based on the fact that it exacerbates O'Connor Redd's conflict of interest as Harleysville's panel counsel, that conflict still remains.  That issue will be fully addressed in the disqualification motion which, per the Court's instruction, is being briefed on a parallel track with this motion.

9

currently representing JBI on the counterclaim, will also not participate in the "allocation of damages."

Thus, its motion begs the questions as to what evidence will be presented and which arguments will be made that will allow the jury to assess the proposed questions. The confusion that these Interrogatories would sow would be prejudicial to JBI and would not add to the effective adjudication of the issues presented by this case. Thus, Harleysville's proposed jury interrogatories (which remain a mystery at present) will not "significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal question presented." H.L. Hayden Co. of New York, Inc. v. State of New York, 797 F.2d 85, 89 (2nd Cir. 1986). In point of fact, those questions posed to a jury, without evidentiary support or even an attorney to address them in opening or closing argument would only lead to confusion.

The other federal cases cited by Harleysville, including Plough, Inc. v. Int'l Flavors & Fragrances, Inc., 96 FRD 136 (W.D. Tenn. 1982) and Fidelity Bankers Life Ins. Co. v. Wedco, Inc., 102 F.R.D. 41 (D.C.Nev.,1984), merely stand for the proposition that intervention can be allowed absent a finding as to whether the proposed interrogatories will go to the jury. Given that Harleysville has not submitted proposed questions for the jury with its motion, or given an intimation as to their exact parameters, JBI takes no position on their submission to the jury should the Court permit Harleysville's intervention.

As for the State Court cases cited at footnote 2 of Harleysville's brief, they do not involve questions of intervention. In those cases, the special interrogatories discussed were proposed by actual parties to those actions. Presumably, the parties that

submitted those Interrogatories also submitted evidence to support them and addressed them in the opening statements and closing arguments presented to the jury. Here, that will not be done and the jury will be left assessing these questions in a vacuum. It is clear that injecting issues into a trial that could confuse a jury is prejudicial. *See* United States v. Quattrone, 441 F.3d 153, 186 (2nd Cir. 2006). Thus, because Harleysville's intervention would confuse the jury, its motion should be denied.

**There is No Prejudice to Harleysville**

Despite the fact that Harleysville argues that failure to allow its intervention "could impair [its] ability to protect its ultimate indemnity obligations", there is no evidence of any such impairment.[4]   Any judgment rendered here would have no impact on Harleysville's ability to adjudicate its coverage obligations. To the contrary, a verdict that does not allocate damages as between the categories that Harleysville seeks would have no res judicata effect on a subsequent coverage litigation. Assuming that a jury assesses damages against JBI, that will not prevent a separate jury from answering any questions that Harleysville may feel are warranted in a declaratory action, assuming that Harleysville ever commences one. The mere fact that Harleysville will have to expend resources to litigate the matter does not constitute prejudice. *See* In re Adelphia Communications Corp., 452 B.R. 484 (S.D.N.Y. 2011) ("The fact that one party has spent time and money preparing for trial will usually not be deemed sufficient prejudice.")

---

[4] Harleysville's position is a bit curious since it argues, on the one hand, that "most if not all" of the claims asserted against JBI are not covered under its policy but then seems to argue that a finding of liability against JBI would somehow burden it.

As detailed in Mr. Barrows affidavit, accompanying this memorandum, he places greater importance on having this trial adjudicated fairly than saving some expenses if the issues need to be clarified in a later litigation.  Clearly, the preferences of an actual party to the litigation should outweigh the preferences of a proposed permissive intervenor.

The fact that Harleysville has no right to intervention under Rule 24(a) and has the ability through a declaratory action to have its rights adjudicated, shows "the lack of necessity for any intervention at all."  In re Auction Houses Antitrust Litig., 00–CV–648, 2000 WL 1864036, *1-2 (S.D.N.Y. Dec. 20, 2000).

Harleysville cannot now complain that a delay between the jury verdict here and an ultimate verdict in a declaratory action is prejudicial to it.   To the contrary, Harleysville has had years to protect its interests, either by making a timely intervention motion, or to have initiated a declaratory judgment action.   It must be recalled that discovery in this matter has been closed for well over one year.  Any additional "delay" in having its coverage rights adjudicated is directly attributable solely to Harelysville's own (in)action.

Finally, the Second Circuit, in Restor-A-Dent, has already ruled that an insurance

**Harleysville's Motion is Procedurally Defective**

Harleysville did not attach a complaint to its motion arguing that the pleadings requirement of Rule 24 can be flexibly applied.  Harlesyville offers to provide a copy of its proposed declaratory judgment complaint.  That Complaint, however, has not been served, is not an intervenor Complaint and would, presumably, not be consolidated with

this action. Harleysville's failure to comply with Rule 24 and its pleading requirements is fatal to its request for permissive intervention.

The cases cited at page 16 of Harleysville's Memorandum of Law allow for some pleading flexibility when addressing intervention as of right, under Rule 24(a). That flexibility does not apply to Harleysville's motion, sought under Rule 24(b).

As explained by the Court in <u>Marriott v. County of Montgomery</u>, 227 F.R.D. 159, 167 (N.D.N.Y. 2005)

> Rule 24(a), in contrast to 24(b) which is at issue here, allows intervention when an interest is claimed relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties. . . In contrast, here the analysis under Rule 24(b) requires a determination of the existence of a common question of law or fact-not whether the interest claimed relates to the action.

In <u>Marriott</u>, the Court ruled that "[i]ntervention would be improper, where, as here, there is no question of law or fact in common with the main action because there is no asserted claim or defense." <u>Marriott</u>, supra at 167. *See also* <u>Hoblock v. Albany County Bd. of Elections</u>, 233 F.R.D. 95, 99 (N.D.N.Y. 2005) ("Courts have held that in certain circumstances, such as Rule 24(b) intervention, intervenors must have a claim or defense when they seek intervention.")

Here too, Harleysville is seeking permissive intervention having failed to submit a claim or defense. Absent that pleading, the question of a common question of law or fact cannot be determined.

13

Further, pleadings are required "since the intervention sought herein is permissive [and] independent bases for jurisdiction are required." <u>High Plains Co-op. Ass'n v. Mel Jarvis Const. Co., Inc.</u>, 137 F.R.D. 285 (D.Neb.1991).  Harleysville has failed to provide that basis here.

It must be recalled that this action is only in Federal Court based on the Uvinos having removed it based on their filing of a bankruptcy petition in the Southern District. Harleysville's intervention is neither a "core claim" nor is it even related to the Uvino's bankruptcy.  *See* <u>In re Nat'l Eastern Corp.</u>, 391 B.R. 663, 669 (D.Conn. 2008) ("Noncore matters are those 'related to' the debtor's bankruptcy case, [that is,] those whose outcome could conceivably affect the bankruptcy estate.")

Harleysville failed to attach an intervenor Complaint and its motion provides no basis for the assertion of the limited subject matter jurisdiction of the federal court over its intervenor claim.

For that reason, alone, Harleysville's motion should be denied.

Dated:       White Plains, New York
             November 18, 2011

                                    Respectfully submitted,


                                    **DREIFUSS BONACCI & PARKER, LLP**


                                    _____/s/_____
                                    By:    Jeremy D. Platek (JDP 9153)
                                    Attorneys for Plaintiff J. BARROWS,
                                    INC and Defendant JOHN BARROWS
                                    520 White Plains Road
                                    Suite 500
                                    Tarrytown, New York 10591
                                    Ph:    (914)366-7337