UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| J. BARROWS, INC.<br><br>                  Plaintiff,<br><br>vs.<br><br>JOSEPH UVINO, WENDY UVINO, et al.<br><br>                  Defendants,<br><br>JOHN BARROWS, et al.<br><br>                  Additional Defendants<br>                  On the Counterclaims, | Case No. 09-CV-3905(LDW)(ETB)<br><br>ECF CASE |
| JOSEPH UVINO, WENDY UVINO, et al.<br><br>                  Third-Party Plaintiffs,<br><br>vs.<br><br>JOHN BARROWS, et al.,<br><br>                  Third-Party Defendant. | |

## AFFIDAVIT

JOHN BARROWS, being duly sworn, deposes and says:

1. I am the President and sole owner of the plaintiff/counterclaim defendant J. Barrows, Inc. (hereinafter "JBI").

2. This affidavit is made in further support of my company's motion seeking to disqualify O'Connor Redd ("O'Connor") as its counsel, transfer the handling of the counterclaim to Dreifuss, Bonacci & Parker, LLP ("Dreifuss") and declare that Harleysville is obliged to pay the legal fees expended in defense of the counterclaim asserted against my company.

3.  I submit this affidavit so the record is patently clear that I requested the transfer of my company's defense from O'Connor based, not on any "tactical concerns", but based on my concern that O'Connor was not solely serving my company's interests in this litigation.

4.  Having now read Joe Redd's submission to this Court regarding Harleysville's intervention, those concerns have become fully apparent and what I had feared, that O'Connor would take a position contrary to JBI's interest, has now come true.

5.  When I received Harleysville's second Reservation of Rights letter on September 14, 2011, I was in the midst of preparing for the trial of this matter. On that very day, I was at Dreifuss' office, meeting with both Mr. Platek and Steven Lau, the partner from O'Connor that was assigned to try the matter. I had already spent hours of my own time, and thousands of my own dollars, paying Mr. Platek, to assist Mr. Lau in his preparation for the defense of the counterclaim at trial.

6.  At that point, the Reservation of Rights letter made me concerned about O'Connor's conflicted loyalty in the case. However, given the imminent trial date, I determined that my company's interest in not having the trial delayed outweighed my concern about O'Connor's position in the case vis a vis Harleysville.

7.  However, on September 20, 2011, this case ended in a mistrial. At that time, I was present and heard this Court's expressed concerns about the conflict created by an attorney's joint representation of two parties, JL

Masonry and Valdespino. The importance of having non-conflicted counsel was spelled out by this Court and it only reinforced my prior unease about O'Connor's divided loyalty. That concern was only reinforced on that day when Harleysville's intervention motion was discussed in Court. It appeared to me that Jeremy Platek was the only attorney that was taking a position that served my company's interests. O'Connor did not.

8. It was on that basis that I wrote to Harleysville, requesting the transfer. When I made that request, it had no impact on the trial schedule, which had not yet been re-scheduled.

9. My concern regarding O'Connor's loyalty has now only been further increased by the position that O'Connor has taken on the intervention motion.

10. I have spoken to Joe Redd once, and only once, regarding this case. It was on November 3, 2011, the night before this Court's last conference. During that conversation, not once did Mr. Redd consult with me about Harleysville's intervention motion. He did not discuss my concerns about it, nor did he ask for any input from me regarding what arguments he would raise in opposition. In the intervening period, he did not call me or make any contact whatsoever with me.

11. I wholeheartedly disagree with the position he has taken in his November 18, 2011 correspondence to the Court. I would never have advised him to seek to have Harleysville's questions submitted to the jury in this matter, before, during or after their decisions on my company's liability. I did not

3

anticipate that he would adopt a position that has been taken by Harleysville without first seeking my consent.

12. His suggestion that doing so is appropriate since it would save my company money not only goes against my explicit concerns (as I expressed in my affidavit to the Court in opposition to Harleysville's motion) but it is questionable in light of Mr. Redd's current presence as the newly designated trial attorney in this matter. Does Mr. Redd believe he will be saving my company money by forcing me to spend time meeting with him in order to prepare for trial when I have already done so, extensively, with his partner Mr. Lau?

13. I do not even understand why this case has now been transferred from Mr. Lau's handling to Mr. Redd, only after this dispute arose between me and the carrier that pays him? Is that transfer in any way related to the dispute? Why has O'Connor never consulted with me about the transfer from Mr. Lau to Mr. Redd? Who is making these decisions?

14. In any event, my concern is to have these claims decided in a fair manner by this jury in front of this court. It is not to save money on a speculative litigation between my company and Harleysville.

15. The position Mr. Redd has taken, in direct contravention of my desires, with no regard for it or effort to consult with me about it, has irreparably damaged any relationship I had with his firm.

16. Harleysville's conduct in this matter, and now O'Connor's misconduct, raise great concerns for me and only furthers my desire to have Mr. Platek,

4

whose loyalty to my company is unquestioned, defend JBI against the counterclaim at the trial of this matter.

_John Barrows_

Sworn to before me this 22nd day of November, 2011

_NOTARY PUBLIC_

ANDREW D HELLMAN
NOTARY PUBLIC-STATE OF NEW YORK
No. 01HE6223266
Qualified in Suffolk County
My Commission Expires June 07, 2014