**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| J. BARROWS, INC. | Case No. 09-CV-3905(LDW)(ETB) |
| Plaintiff, | |
| vs. | |
| JOSEPH UVINO, WENDY UVINO, <u>et al</u>. | **ECF CASE** |
| Defendants, | |
| JOHN BARROWS, <u>et al</u>. | |
| Additional Defendants On the Counterclaims, | |
| JOSEPH UVINO, WENDY UVINO, <u>et al</u>. | |
| Third-Party Plaintiffs, | |
| vs. | |
| JOHN BARROWS, <u>et al</u>., | |
| Third-Party Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF, J. BARROWS, INC.'S, COUNTERCLAIM DEFENDANT J. BARROWS,**
**INC.'S AND JOHN BARROWS'**
**MOTIONS IN LIMINE**

**Evidence Submitted to the Town of East Hampton Municipal Licensing Board Should Be Precluded**

In 2009, the Uvinos lodged a Complaint against J. Barrows, Inc. (hereinafter "JBI") with the Town of East Hampton Municipal Licensing Board (hereinafter "The Board") seeking to have it revoke JBI's Home Improvement Contractor's license. A hearing was held by The Board in August of 2009. It is JBI's contention that all documents filed with the Board in relation to that hearing, all testimony taken at that hearing and any findings by The Board are irrelevant, unduly prejudicial and should not be admitted as evidence before this jury.

In conjunction with their designation of trial exhibits, the Uvinos have designated their Complaint to The Board, the Answer drafted by JBI's counsel, a Power Point presentation made at The Board Hearing by the Uvinos and The Board's determination. The Uvinos have also indicated that it is their intent to call Mark Fields, a member of that Board, as a trial witness. Mr. Fields had no relation whatsoever to this project and his only potential relevance to this litigation is as a member of The Board.

1

Neither the documents nor Mr. Fields testimony is admissible because it is either self-serving hearsay or irrelevant.  Moreover, the proceedings before The Board have no probative value for this jury to consider.  In attempting to submit this evidence, the Uvinos are seeking to subvert the fact-finding role of this jury and supplant it with that of the Board.

It is Black Letter law that self-serving statements are inadmissible hearsay.  *See* Desir v. Board of Co-op. Educational Services (BOCES) Nassau County, 803 F.Supp.2d 168 (E.D.N.Y. 2011); Morse v. U.S., No. 94–CV–0619, 1997 WL 842416 (E.D.N.Y. December 31, 1997) (documents authored by party itself seeking admission are self-serving hearsay).  The Uvinos' Complaint to the Board and their Power Point presentation are nothing more than that and must be excluded.

The findings of that Board have no estoppel effect in subsequent proceedings.  *See* Wunderlich v. Hampton Design and Const. Group, Inc., 5 A.D.3d 158, 773 N.Y.S.2d 54 (1st Dep't 2004).  Moreover, the sole factual determination of that Board which underlied its holding was not that JBI breached its contract with the Uvinos (the issue that the Uvinos seek to have determined by this Court) but merely that Valdespino, one of the named defendants herein, did not have a valid Home Improvement license at the time of the performance of its work.  Crucially, the Board itself (as reflected in the Wunderlich decision) has requested that any of its findings not have any *res judicata* effect and the Uvinos effort to now bring this finding to the jury as evidence is improper.  Any remote relevance it may have is far outweighed by the prejudice that would result from its inclusion.

Moreover, Mark Fields is a member of the Easthampton Board, and any testimony from any members of the Board regarding their findings or the hearing generally must be precluded as it is extraneous and seeks to supplement the role of the jury, the true fact finders of this case.  As Mr. Fields had no involvement with this project other than his role on The Board, any testimony he could offer would be based on his knowledge gleaned at that hearing.

Accordingly, the documents and witnesses related to that proceeding should be precluded from admission at this trial.

**Testimony from Anyone on behalf of Town Design Home Improvement Must be Excluded**

The Uvinos have disclosed "Town Design Home Improvement" as a witness in their "Witness List," dated September 6, 2011.  This Court required all parties to disclose final witness lists two weeks prior to trial.  "Town Design Home Improvement" is not a person, it is a company, and therefore, not a proper witness.

F.R.C.P 26(a)(3)(A)(i) requires all pre-trial disclosures of witnesses to include the "[n]ame and, if not previously provided, the address and telephone number of each witness…"  The purpose of the Rule is to prevent trial by ambush, a tactic which the Uvinos are attempting to deploy.

Here, the Uvinos have never previously disclosed anyone on behalf of Town Design Home Improvement.  As a result, no depositions of any such witness was ever taken or sought.

Now, the Uvinos, after three years of litigation, provide only a company name, not the identity of a person, their address or telephone number. The Court should not countenance such surprise tactics. In light of such an improper disclosure, F.R.C.P. 37(c) should act to bar the Uvinos from calling any witness from that Company.

**Parol Evidence Must Be Excluded**

The Construction Management Agreement (attached hereto as Exhibit "A" and hereinafter referred to as the "CM Agreement") entered into by and between the Uvinos and JBI contains the following clause at Article 6.1. "This Agreement represents the entire and integrated agreement between the Owner and the Construction Manager and supersedes all prior negotiations representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both the Owner and the Construction Manager."

There is no dispute that the Uvinos read this agreement. Mr. Uvino, a lawyer, in fact enlisted one of his partners at his firm to also read and review it.

The Uvinos in the course of this litigation, have attempted to offer various evidence that they argue reflects the parties' true understanding of the Agreement. However, given the above-stated contract language, efforts to do so should be precluded. See Pludeman v. Northern Leasing Systems, Inc., 74 A.D.3d 420, 904 N.Y.S.2d 372 (1st Dep't 2010) ("insofar as a merger clause requires the full application of the parol evidence rule, thereby barring extrinsic evidence to vary the terms of a the trial court could conclude that any extrinsic evidence, such as the circumstances regarding each lease's execution, including any oral representations are barred, thereby precluding individualized proof.") (citations omitted); Corporate Graphics, Inc. v. Mehlman Management Corp., 81 A.D.2d 767, 438 N.Y.S.2d 805 (1st Dep't 1981) ("plaintiff cannot rely on any alleged representation by the landlord that unobtrusive commercial use was a use permitted by the lease or by law. Since the written instrument contains terms different from those allegedly orally represented, and plaintiff is presumed to have read the writing, he may not claim he relied on the representations.) (citations omitted).

As such, efforts to offer into evidence any understandings as between the parties that pre- or post-date the agreement should be precluded.

Likewise, efforts to offer into evidence a one-page "addendum" that is unsigned, undated and bears no initials of any of the parties must be precluded. Further, efforts to offer into evidence agreements concerning post-execution modifications should also be precluded.

The various obligations of the parties, as spelled out by the contract, are unambiguous and any evidence and or testimony offered by the Uvinos to broaden those obligations would be improper. The parties' duties and obligations are spelled out explicitly in the contract and cannot be expanded by parole evidence.

**The Uvinos' Expert Testimony Should be Confined to the Four Corners of His Report**

The Uvinos, per this Court's direction, have designated six construction defects which they will attempt to prove at trial. (Their designation is attached hereto as Exhibit "B") They are the following:

1. Vertical Siding;
2. Waterproofing/closure details, including window heads and screen porch;[1]
3. Failure in sequencing by installation of concrete slab over septic tank before inspection;
4. Wood/Masonry/Trellis Installation;[2]
5. Interior Reveals; and
6. Improperly installed floor beam.

The Uvinos' expert, William Waldron, offered opinion in his 31-page report (attached hereto as Exhibit "C") ) regarding the "quality issues" he observed at the site. In his own words (at page 14 under Heading X.) he identified "the existing condition, result thereof, remediation required and [his] opinion as to the better practice that should have been followed."

The Uvinos' expert should be precluded from offering testimony at trial that would expand on his opinions as to what the "Better Practices" during the project should have been. They are addressed in the Order presented by the Uvinos' designations, but with the Headings provided in Mr. Waldron's report. To wit:

**D. Design and Installation Flaws with the Vertical Siding**. On page 16 of his report, Mr. Waldron states that "[h]orizontal nailers, perpendiculars to the wall studs, should have been specified by the architect. . . . The architect should have called for horizontal blocking where vertical wood siding was to be installed."

**C. Design and Installation Flaws in the Window Head Details**. On page 16 of his report, Mr. Waldron states "[p]lans and specifications should have called for drip caps to be installed at the head jams of all windows. . . . Appropriate installation details should have appeared as details on the drawings and in the written specification."[3]

**K. Design and Installation Flaw with the Wood/ Masonry Detail**. At page 18 of his report, Mr. Waldron states that "[w]here the wood siding is in contact with masonry, flashing

---

[1] The Uvinos' "six" designations in fact encompass more than six defects and, to the extent that the Court has directed that the trial is to proceed on the basis of an "exemplar" trial, the Uvinos' failure to comply with that directive is objected to on that basis as well.
[2] Another example of the Uvinos' failure to heed this Court's directive.
[3] Although the Uvinos allege a defect with regard to the waterproof/closure details of the screen porch along with the windows in number 2 of their designations (resulting in a list of more than 6 defects), Mr. Waldron offers no opinion with regards to a "Better Practice" concerning that aspect of the project.

should have been specified. The reveal typically used throughout the building could also have been specified."[4]

  **M. Flaws in Trellis Design.** On page 19 of Mr. Waldron's report, he states that "[a] detail that supported the horizontal members from below would have eliminated the shear force."[5]

  **A. Design and Specification Flaws in the Reveals** On page 14 of his report, Mr. Waldron states that "[p]lans and specifications could have called for use of an engineered wood product in lieu of conventional framing materials.

  Thus, as concerns the Uvinos' designations numbered 1, 2, 4 and 5, Mr. Waldron explicitly attributes the quality issues solely to poor design and/or a lack of specification by the architects.

  Nowhere does Mr. Waldron state that the issues arose from JBI's breach of contract or negligence. Notwithstanding, at his deposition, Mr. Waldron proffered a new theory to assert liability as against JBI for these problems at the house. He stated that JBI was liable for these design defects because "[i]t is an industry standard [for a contractor] to ask for clarification [from the architect]." He thereafter testified that JBI's failure to do so was a contractual breach and/or negligence.

  However, proffering this opinion at a deposition does not comply with Rule 26 of the Federal Rules of Civil Procedure which requires all expert witnesses to submit a written report that includes "a complete statement of all opinions the witness will express and the basis and reasons for them [and] the facts or data considered by the witness in forming them." Fed.R.Civ.P. 26(a)(2)(B).

  In fact, Rule 26(e) requires expert disclosures to be supplemented when the party who made the disclosure "learns that in some material respect the disclosure ... is incomplete or incorrect ...." Despite the fact that his deposition was conducted in December of 2010, Mr. Waldron's report has never been amended or supplemented and the Uvinos have never sought leave of Court to do so.

  Rule 37 provides for "automatic" preclusion for failure to comply with Rule 26(a)(2)(B)'s expert report requirement:

    If a party fails to provide information or identify a witness as required by
    Rule 26(a) or (e), the party is not allowed to use that information or

---

[4] As with their second designation where they combined the windows and screen porch, Wood/Masonry is another example of the Uvinos' lumping in more than one defect into one designation, as they have included trellis installation in that designation.

[5] Despite requests that the Uvinos clarify their designations to be more specific as to which defects they were designation (see Exhibit "D" attached hereto), they failed to do so and, as such, it is unclear whether they were referring to the trellis design defect or a specific question with regard to the hardware installed on the trellises.

witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed.R.Civ.P. 37(c)(1).

This "automatic sanction" is a "self-executing sanction," according to the 1993 Advisory Committee Notes. *See, generally* 8A Wright, Miller & Marcus, Federal Practice & Procedure: Civil 2d § 2289.1; 7 Moore's Federal Practice §§ 37.60[1]-[2].

As stated by the Courts, "[t]he purpose of the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence." Deluca v. Bank of Tokyo–Mitsubishi UFJ, Ltd., No. 06 Civ. 5474, 2008 WL 857492, at *12 (S.D.N.Y. Mar. 31, 2008) (*citing* Ebewo v. Martinez, 309 F.Supp.2d 600, 607 (S.D.N.Y.2004)). "A district court has wide discretion to impose sanctions, including severe sanctions, under" Rule 37. Design Strategy, Inc. v. Davis, 469 F.3d 284, 294 (2d Cir. 2006). No showing of bad faith is required before a court may preclude evidence. Id. at 296.

"Expert testimony exceeding the bounds of the expert's report is excludable pursuant to Rule 37(c)(1)." In re Kreta Shipping, S.A., 181 F.R.D. 273, 275 (S.D.N.Y.1998); *see also* Rowe Entm't, Inc. v. William Morris Agency, Inc., No. 98 Civ. 8272, 2003 WL 22124991 (S.D.N.Y. Sept. 15, 2003) (confining testimony from expert to opinions set forth in his expert report). The "duty to disclose information concerning expert testimony is intended to allow opposing parties to have a reasonable opportunity [to] prepare for effective cross examination and, perhaps, arrange for expert testimony from other witnesses." Lamarca v. United States, 31 F.Supp.2d 110, 122 (E.D.N.Y.1999) (*citation and internal quotation marks omitted*).

Here, the assertion by Mr. Waldron that JBI should be held accountable for "quality issues" that arise from the architect's designs or specifications is non-sensical in the "absence of the logic filling gap" offered at his deposition that industry standard requires a Construction Manager to question an architect's design drawings.[6] Allowing him to now proffer this opinion, when his report fails to contain it, "would eviscerate the purpose of the expert disclosure rules." Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., 769 F.Supp.2d 269, 279 (S.D.N.Y.2011) (*quoting* United States v. City of N.Y., 637 F.Supp.2d 77, 107 (E.D.N.Y.2009)); *see also* Silivanch v. Celebrity Cruises, Inc., 171 F.Supp.2d 241, 256 (S.D.N.Y.2001) (precluding expert testimony that was not disclosed during expert discovery).

Thus, Mr. Waldron should be precluded from offering any opinion as to the "Better Practice" other than what was explicitly proffered in his expert report.

---

[6] It is also incorrect, as a matter of law. JBI was in fact obligated to follow the architect's designs and would have been liable for failing to do so. See Fruin-Colnon Corp. v. Niagara Frontier Transp. Auth., 180 A.D.2d 222, 585 N.Y.S.2d 248 (4th Dep't 1992).

**Mr. Waldron Should be Precluded from Testifying As To Damages Liability because he Fails to Allocate Responsibility between the Architect and JBI**

With regard to the third item designated by the Uvinos, the "Failure in sequencing by installation of concrete slab over septic tank before inspection", Mr. Waldron, at page 13 of his report, states that this issue "resulted from both a failure by the architect to take the septic tank into account in designing the slab, as well as the construction manager's failure to properly coordinate the slab construction, septic tank location and Suffolk County inspection."[7]

However, as is the case with every other issue that Mr. Waldron attributes to various parties, in the case of the septic tank, he wholly fails to apportion responsibility between the various parties that he alleges bear responsibility.

Under Rule 702, an expert's testimony is admissible if it will assist the trier of fact and is (1) "based upon sufficient facts or data"; (2) "the product of reliable principles and methods"; and (3) "the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702. "In assessing the reliability of expert testimony, the trial court must decide not only whether an expert's methodology is reliable for some purposes, but whether it is a reliable way 'to draw a conclusion regarding the particular matter to which the expert testimony was directly relevant.' " R.F.M.A. S., Inc. v. So, 748 F.Supp.2d 244, 248 (S.D.N.Y.2010) (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 154, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).

Here, JBI, KMA and the various trade contractors entered into separate agreements with the Uvinos all of which encompassed different obligations. Thus, they do not have joint and several liability for the "quality issues" that Mr. Waldron alleges against them collectively. See NYKcool A.B. v. Pacific Fruit Inc., 10 Civ. 3867, 2010 WL 4812975 (S.D.N.Y. November 24, 2010).

Thus, Mr. Waldron's report which ails to allocate damages among different defendants, is inadmissible in this multi-defendant case. See, e.g., R.F.M.A. S., 748 F.Supp.2d at 267–68 ("[I]f the testimony of plaintiff's putative damages experts were admissible, it would be of limited utility. [The experts] were not asked to (and did not) distinguish between the liability of ... [the various] defendants or separate the harms flowing from each assumed legal violation.... They concluded only that 'defendants' actions,' collectively, caused the deterioration of plaintiff's relationship with Neiman Marcus. Thus, their testimony, if admissible, would be helpful to determining damages only if all defendants were found jointly and severally liable on every cause of action alleged.")

Here, the Uvinos' failure to allocate responsibility between parties for the alleged construction defects requires the preclusion of Mr. Waldron's opinions as to damages.

---

[7] Mr. Waldron report is replete with alleged defects that he claims arose from both the negligence of KMA as the architects and JBI as the construction manager as well as various trades.

**Testimony and/or Evidence from the Uvinos Regarding Delay Should be Precluded**

The Uvinos have alleged that they have been damaged as a result of delays in the project. Their expert, Mr. Waldron failed to delineate what aspects of the delay were attributable to KMA and what aspects were attributable to JBI. In point of fact, the Uvinos themselves acknowledge that they made decisions that impacted the costs of the project and caused additional time to be spent. Accordingly, any testimony proffered to attribute total delays in the project to one specific party is inadmissible.

Generally, where there are simultaneous or overlapping delays on a project due to multiple parties (sometimes referred to as "concurrent delays"), such delays are not compensable. As stated in Manshul Constr. Corp. v. DASNY, 79 A.D.2d 383 (1st Dept. 1981):

> When claims are made for damages for delay, plaintiff must show that defendant was responsible for the delay; that these delays caused delay in completion of the contract (eliminating overlapping or duplication of delays); that the plaintiff suffered damages as a result of these delays, and plaintiff must furnish some rational basis for the court to estimate those damages, although obviously a precise measure is neither possible nor required.

Id. at 387 (other citations omitted).

Here, the Uvinos attempt, per Mr. Waldron's analysis, to use a modified total cost/total time method to assess delay damages against JBI is particularly inappropriate where he has alleged delays attributable to both KMA and JBI and fails to delineate as between the two.

As such, any testimony proffered regarding delay should be excluded.

Moreover, as discussed above, his failure to allocate percentages of liability for the alleged delay as between KMA and JBI is also fatal to the analysis. "An owner is not entitled to damages where he or she is the one responsible for the delays in completion, such as where the delays are caused ... by the delays of another contractor in supplying material, and by the ordering of new work not contemplated by the original contract." *See* Fredlund v. De Rosa, 309 A.D.2d 1287 (4th Dep't 2003) and Smith v. Vail, 53 A.D. 628 (1st Dep't 1900), aff'd, 166 N.Y. 611 (1901).

Here, there are numerous causes for the delays including the Uvinos decision during the course of the construction to make changes to finishes and design. As the Uvinos' own expert Mr. Waldron was unable to allocate the alleged delays between KMA, JBI, trade contractors or the Uvinos themselves, he cannot now proffer such opinion and, accordingly, it must be precluded.

**The Uvinos Should be Precluded from Offering Evidence Regarding Delays As They Were not Contemplated in the Construction Management Agreement**

The Uvinos allege they have been damaged as a result of delays in that, among other things, it caused a loss of rental income on the property and an inability to lock in a lower interest rate on their mortgage. However, an owner cannot recover damages for alleged delays in completion where they were not contemplated at the time the agreement was reached for the construction. Here, there is no clause in the Agreement reached between JBI and the Uvinos which placed a time limitation on the project's length or provided for damages emanating from any delays caused by either party. In fact, the Construction Management Agreement contemplated a possible delay of the project beyond the projected timeframe as it required an additional payment of $14,300 to JBI for each additional month the project continued.

Moreover, there is no evidence that at the time the contract was entered into, JBI was aware that the Uvinos were planning on renting the property or refinancing it. For that reason, any evidence that the Uvinos have been damaged due to their inability to rent the property or obtain favorable financing should be excluded. *See* Wasilewski v. Dalton School, Inc., 180 A.D.2d 561 (1st Dep't 1992) (delay damage evidence properly exclude since it was "clear that the alleged delay damages could not have been reasonably foreseen or contemplated by plaintiff at the time the contract was entered into. Indeed, there was never any specific time of performance agreed to by the parties during negotiations.")

Accordingly, since the contract did not contemplate delay damages, evidence regarding the Uvinos' delay damages should be precluded.

**The Uvinos' Alleged Damages for Remedial Repairs Not Yet Undertaken Must be Excluded Since they are Speculative and Unsupported by Probative Evidence**

The Uvinos have alleged $652,700 in future remediation costs as detailed in a two page document entitled "III Remediation of Defects." However, that estimate is merely a number generated by the Uvinos with no evidentiary support.

Ms. Uvino testified that she generated the list "in consultation with Don Moore, Joe Uvino, or looking at what we spent to do some of the initial work." Don Moore, in fact testified that he was not aware whether his company or someone else created the document and indicated the dollar amounts contained therein were a "rough estimate." When questioned extensively about each specific figure, he was unable to testify as to how any of them were reached.

Ms. Uvino further testified that she did not even have any back-up documentation to support any of the figures.

Even if Ms. Uvino were an expert in construction, which she is not, her attempt to calculate the amount of damages for work that has yet to be performed, would be inadmissible. "A damage figure in an expert report cannot satisfy Rule 26(a)(B)(2) simply by stating a conclusory figure and them attaching documents that purportedly support that figure. Rather, the report must supply actual calculations with detailed and complete information elucidating how

the expert arrived at the damage figure." <u>Great White Bear, LLC v. Mervyns, LLC</u>, No. 06 Civ. 13358, 2008 WL 2220662, at *3 (S.D.N.Y. May 27, 2008).

Furthermore, the damages are based entirely upon hearsay and should be barred for that reason as well. Fed. R. Evid. 801; *see also* <u>U.S. v. Dukagjini</u>, 326 F.3d 45, 58 (2nd Cir. 2003) (an expert is permitted to disclose hearsay for the limited purpose of explaining the basis for his expert opinion, but not as general proof of the truth of the underlying matter).

Dated:      Tarrytown, New York
            March 2, 2012

                              Sincerely yours,


                              **DREIFUSS BONACCI & PARKER, LLP**


                              _____/s/_____
                              By:    Jeremy D. Platek
                              Attorneys for Plaintiff J. Barrows,
                              Inc. and Defendants J. Barrows, Inc.
                              and John Barrows
                              520 White Plains Road
                              Suite 500
                              Tarrytown, New York 10591
                              Ph:    (914) 366-7337

To:  All Parties Via ECF & E-Mail