UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------x
J. BARROWS, INC.,                                          CV 09 03905
                                                           (LDW)(ETB)
                            Plaintiffs,

            -against-

JOSEPH UVINO, WENDY UVINO, WOOD
& COLORS, INC., and POOLS BY GUILLO,
INC.

                            Defendants.
----------------------------------------x
JOSEPH UVINO, ET AL.,

            Third-Party Plaintiffs,

            -against-

J. BARROWS, INC., VALDESPINO CUSTOM
BUILDERS, INC., J.L. MASONRY &
CONSTRUCTION, INC., F. SCHNEIDER
CONTRACTING CORP., and HAMPTON
CONTRACTING, INC.

            Third-Party Defendants.
----------------------------------------x

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A NEW
TRIAL AS TO DAMAGES AGAINST KAEHLER MOORE ARCHITECTS**

                        GOGICK, BYRNE & O'NEILL, LLP
                        Attorneys for Defendant
                        KAEHLER MOORE ARCHITECTS
                        11 Broadway, Suite 1560
                        New York, NY 10004
                        (212) 422-9424

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ..................................i, ii

PRELIMINARY STATEMENT ......................................1

THE LEGAL STANDARD ........................................1

THE JURY'S DETERMINATION OF PLAINTIFF'S DAMAGES...........4

THE JURY VERDICT WAS NOT INADEQUATE ...................... 6

CONCLUSION ...............................................15

## TABLE OF AUTHORITIES

*Case Law*                                                                           *Page*

Bevino v. Sadjarai,
572 F.2d 676, 684 (2d. Cir. 1978) ............................ 2


Datskow v. Teledyne Cont. Motors Air-Craft Prods.,
826 F. Supp. 677 (W.D.N.Y. 1993) ............................. 2


Gasperini v. Center for Humanities, Inc.,
518 U.S. 415, 425 (1996) ..................................... 2

Greengrass Enterprises, Inc. v. Rotfeld,
83 F.R.D. 159 (E.D.Pa. 1979) ............................... 3,4

Haug v. Grimm,
251 F.2d 523 (8th Cir. 1958) ................................. 3

In re Halko,
203 B.R. 668 (Bankruptcy Court N.D.I11. 1996) ............... 4

Johnson v. City of New York,
2011 W.L. 2693234 (S.D.N.Y. 2011) ........................... 2

Patterson v. Balsamico,
440 F.3d 104, 119 (2d Cir. 2006) ............................ 2

Phav v. Trueblood, Inc.,
915 F.2d 764 (1st Cir. 1990) ................................. 3

Rosa v. City of Chester, Pennsylvania,
278 F.2d 876 (3RD Cir. 1960) ................................. 1

Schuerholz v. Roach,
58 F.2d 32 (4th Cir. 1932), certiorari denied,
287 U.S. 623, 53 S.Ct. 78, 77 L.Ed. 541 (1932) .............. 3

So v. Wing Tat Realty, Inc.,
687 N.Y.S. 2d 99, (1st Dep't 1999) .......................... 2

Southern Ry. Co. v. Madden,
235 F.2d 198 (4th Cir. 1956),certiorari denied
352 U.S. 953, 77 S. Ct. 328, 1 L.Ed.2d 244 .................. 3

*Page*

<u>Tookes v. The Port Authority of New York</u>
<u>and New Jersey</u>, 2011 WL 3555813, (E.D.N.Y. 2011) .............1,2


**_Statutes_**

Federal Rules of Civil Procedure 59 ...........................3

New York Civil Practice Law and Rules PLR § 5501 ..............2


**_Treatise_**

6A J. Moore, Moore's Federal Practice ¶ 59.08[5]2 .............2

**PRELIMINARY STATEMENT**

Plaintiff's motion should be denied for the two reasons described in detail below: 1) while plaintiffs' contend that they were awarded only $63,191 for their damages against KMA, plaintiffs' made identical claims against KMA and J. Barrows Inc. (JBI)  The jury determined that the plaintiffs' damages for their claims against both KMA and JBI totaled $464,819.  Of that, the jury assessed damages totaling $401,628 against JBI and $63,191 against KMA; 2) even if the jury determined that plaintiffs' total damages were $63,191, that amount was not inadequate as against KMA.

**The Legal Standard**

The power to order a new trial as to damages only must be exercised with caution.  See Rosa v. City of Chester, Pennsylvania, 278 F.2d 876 (3RD Cir. 1960).

In this action, the Court should only order a new trial if the award "deviates materially from what would be reasonable compensation".  See Tookes v. The Port Authority of New York and New Jersey, 2011 WL 3555813, *2 (E.D.N.Y. 2011).[1]  In making this determination, the Court here should operate under the standard

---

[1] One consideration of the "material deviation" standard may be if the damages arguments at trial were contested or not.  See, e.g., New Orleans & N.E.R. Co. v. Hewett Oil Co. 341 F.2d 406 (5th Cir. 1965) (holding that new trial was proper where the damages awarded were half of what had been entered into evidence at trial, unopposed).  In the instant action, that was not the case.

provided by New York CPLR § 5501 (c) because the claims are governed by New York substantive law.  See id.

The review process provided for in New York law is more "exacting" than the Federal standard.  See id. (citing Patterson v. Balsamico, 440 F.3d 104, 119 (2d Cir. 2006).  Under the New York standard, the Court may review other similar cases.  See Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 425 (1996).  However, these other cases are merely instructive as to the facts and award in the action at hand because "no two cases are exactly the same."  As modification of damages is a "speculative endeavor", such modification cannot be made solely by looking at other matters as this determination may be "virtually impossible".  See Tookes, 2011 WL 3555813, *2 (E.D.N.Y. 2011) (citing So v. Wing Tat Realty, Inc., 687 N.Y.S. 2d 99, 101 (1st Dep't 1999)); See also Johnson v. City of New York, 2011 W.L. 2693234 (S.D.N.Y. 2011).

Generally, the court should " 'abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result.' "See Datskow v. Teledyne Cont. Motors Air-Craft Prods., 826 F. Supp. 677 (W.D.N.Y. 1993) (quoting Bevino v. Sadjarai, 572 F.2d 676, 684 (2d. Cir. 1978); 6A J. Moore, Moore's Federal Practice ¶ 59.08[5]).

Though the Court can order a new trial of this matter

solely on damages pursuant to Rule 59 (a) of the Federal Rules of Civil Procedure should the damages be found inadequate, "retrial of all the issues is required" 'if the verdict could only have been a sympathy or compromise verdict.' "See <u>Phav v. Trueblood, Inc.</u>, 915 F.2d 764 (1st Cir. 1990).

"[W]hen a jury's verdict is obviously the result of a compromise on the questions of liability and damages, it is considered unjust to order a new trial on damages only." <u>See Southern Ry. Co. v. Madden,</u> 235 F.2d 198 (4th Cir. 1956), certiorari denied 352 U.S. 953, 77 S.Ct. 328, 1 L.Ed.2d 244 (1956); <u>See also</u> <u>Schuerholz v. Roach,</u> 58 F.2d 32 (4th Cir. 1932), certiorari denied <u>Scheurholz v. Roach,</u> 287 U.S. 623, 53 S.Ct. 78, 77 L.Ed. 541 (1932). The Court in <u>Haug v. Grimm</u> similarly held that a new trial on damages should not be ordered "where there is good reason to believe that the inadequacy of the damages awarded was induced by unsatisfactory proof of liability and was a compromise." <u>See</u> <u>Haug v. Grimm</u>, 251 F.2d 523 (8th Cir. 1958).

Additionally, motions for new trial are not intended merely to relitigate old matters, nor are such motions intended to allow parties to present case under new theories, but these motions are intended to correct manifest errors of law or fact or to present newly discovered evidence. <u>See, e.g.,</u> <u>Greengrass Enterprises, Inc. v. Rotfeld,</u> 83 F.R.D. 159 (E.D.Pa. 1979). Likewise, the purpose of these motions is not to give the moving

3

party another "bite at the apple" by permitting arguing of issues and procedures that could and should have been raised prior. See, e.g., <u>In re Halko</u>, 203 B.R. 668 (Bankruptcy Court N.D.Ill. 1996).

Moreover, without conceding that the Uvinos would be entitled to a new trial, this motion is premature. Currently pending before this Court is a motion by JBI and a cross-motion by KMA seeking a collateral source hearing regarding the amounts of the Uvinos' settlements with various trade contractors to ensure that any payments and/or promise to pay the Uvinos from these settlements do not result in a double recovery to the Uvinos for KMA's purported breaches. Before this collateral source hearing is held and a determination is made, this Court should not make a determination if the award to the Uvinos materially deviates from their purported losses.

### The Jury's Determination Of Plaintiff's Damages

Plaintiffs claimed that KMA and JBI were liable for the same damages. In his opening statement on March 6, 2012, plaintiff's attorney William Dahill told the jury that the responsibility for delays, overcharges and defect is with JBI and the architect (i.e. KMA).

In their motion for a new trial, and during the trial, plaintiffs offered, the following as proof of their damages:

4

- Cost overruns (Exhibit 152A)[2]
- Change orders (Exhibit 115)[3]
- Defects (Exhibit 152A)[2]
- Delay (Exhibit 164)[4]

At trial, all of the claims referenced in these exhibits were asserted against both JBI and KMA.

In their motion for a new trial, plaintiffs argue that the award for these same damages are inadequate because the jury assessed damages against KMA for $63,191. Plaintiff's ignore the fact that the jury awarded $464,819 in total for their damages arising from those claims which were asserted against both JBI and KMA. Specifically, the jury made these determinations regarding damages:

| | | |
|---|---|---|
| • | General damages against JBI | $317,840 |
| • | Consequential damages against JBI | $83,788 |
| | | $401,628 |
| • | General damages against KMA | $63,191 |
| • | Consequential damages against KMA | 0 |
| | | $464,819[5] |

The jury determined that the total value of plaintiff's claims for cost overruns, change orders, defects and delays was $464,819. The jury apportioned those damages $401,628 to JBI and $63,191 to KMA.

By seeking a new trial for damages solely against KMA,

---

[2] Exhibit A herein
[3] Exhibit B herein
[4] Exhibit C herein
[5] The jury also awarded $51,231.04 on plaintiffs' breach of fiduciary duty claim against JBI. These damages do not result from claims made against both JBI and KMA so they are not included in this calculation.

plaintiff implicity admit that the damages award against JBI was
adequate.   Effectively, plaintiffs seek to keep the amount of
damages awarded against JBI and increase the award against KMA
with the result of increasing the total amount of their damages.
However, the jury already determined that the total value of
plaintiffs' claims, all of which were asserted against both KMA
and JBI, was $464,819.   Plaintiff's motion for a new trial for
damages solely against KMA should be denied because the jury
already determined the total value of plaintiffs' damages and
plaintiffs should not be allowed to increase the jury's total
verdict by ordering a new trial solely against the defendant with
the smaller apportioned share.

**The Jury Verdict
Was Not Inadequate**

Plaintiffs claim that the jury verdict against KMA was
inadequate based on the four categories of claims that plaintiffs
asserted against KMA and JBI: 1) cost overruns, 2) change orders,
3) defects and 4) delays.


1. Cost Overruns

Plaintiffs claimed that they should be compensated for
costs expended above their "final budget" of $2.3 million
(plaintiffs' supporting memorandum of law, page 7).   However,
plaintiffs had no entitlement to any fixed limit of construction

6

cost. Plaintiffs' contracts with KMA[6] and JBI[7] had no mention of, let alone limit on, construction cost. In addition, plaintiffs "budget" was at least $3.25 million, not $2.3 million. In an email to JBI on May 24, 2007, Joseph Uvino urged JBI to advise an appraiser that "All in, the project will cost the Uvinos approximately $3.25 million, exclusive of land acquisition costs".[8] Finally, the actual appraised value of the home as of June 2007, shortly after Mr. Uvino told JBI to tell the appraiser that the cost of the house is $3.25 million, was $4.8 million.[9] The appraiser found that "the building costs for homes in this area are usually $450 per square foot. This property is being built at $650 per square foot." The premise of plaintiffs' claim, that the cost was fixed at $2.3 million, is false and was rejected by the jury.


2. Change Orders

Plaintiffs claim that they "only sought changes to the scope of the project which resulted in proper change orders in the amount of $27,310.00" but that a document prepared by John Barrows of JBI indicated approved change orders of $481,886.90. (Plaintiffs' supporting memorandum, page 9).

However, the trial testimony was undisputed that

---

[6] Exhibit D herein
[7] Exhibit E herein
[8] Exhibit F herein
[9] Exhibit G herein

plaintiffs worked exclusively with JBI, to the exclusion of KMA, on all financial matters including change orders.  Change orders were not submitted to or signed by KMA.  They were reviewed and signed only by plaintiffs and JBI.  For example, Change Order 57[10] was signed by plaintiff Wendy Uvino and John Barrows of JBI and has no signature line for KMA.  Furthermore, plaintiff Wendy Uvino approved and signed this change order which indicated that "Net change by previous change orders" was $326,983.44.  Ms. Uvinos signature on change order 57, reflecting her approval of $326,983.44, belies plaintiffs' claim that they only approved change orders in the amount of $27,310.00.  The jury rejected plaintiffs' false claim regarding change orders.


   3. <u>Defects</u>

Plaintiffs claim that the jury should have found KMA liable for these defects:

| | |
|---|---|
| a) Repair vertical siding and install missing drip caps | $159,770 |
| b) Reveals | $238,855 |
| c) Trellises | $30,000 |
| d) Pool house | $65,000 |
| e) Screened porch | $30,000 |
| f) Great room ceiling | (no alleged damages) |
| g) Stair tower | $40,000 |

Plaintiffs made all of these claims against JBI, certain

---

[10] Exhibit H herein

other trade contractors, and KMA.  It may be presumed that some of those amounts are included within the verdict against JBI for general damages of $317,840.  Also, plaintiffs made a claim against, and settled with, defendant Pools by Giullo in an undisclosed amount.[11]  The jury may have found that some portion of the claims for defects was attributable to KMA which could provide the basis for its $63,191 verdict against KMA.

a) Vertical siding and missing drip caps

Plaintiffs claim $159,770 to repair vertical siding and install missing drip caps.  Plaintiffs offered no proof at trial, and offer none in support of this motion, that KMA was responsible for the repairs to vertical siding.  The only proof offered of KMA's liability is for the missing drip caps.[12]  Plaintiffs offer William Waldron's testimony that "the original plans did not call out for proper flashing or for the use of drip caps."[13]  There is no testimony or document establishing KMA's liability for the vertical siding.  Like all the other claims, the claims for vertical siding and missing drip caps were also asserted against JBI against whom the jury allocated a far larger share of damages.

---

[11] KMA's cross motion for a collateral source hearing seeks disclosure of and a set off for the amounts received by plaintiffs for this and other settlements with trade contractors.
[12] See plaintiff's supporting Memorandum page 9, paragraph (c)(i)
[13] March 12th Waldron Testimony at 44:15.22

b) Reveals

For the first time on this motion, plaintiffs claim damages of $238,855 to fix reveals. Plaintiffs never offered any proof at trial of the costs to fix reveals. Plaintiffs' repair costs are described in their Exhibit 152A, pages TG001097 to TG001106. (Exhibit A herein). There is no reference to costs to repair reveals in plaintiffs proof of its repair costs.[14]

c) Trellises

Plaintiffs offered no proof of KMA's liability for the trellises, either at trial or on this motion. The only proof offered by plaintiffs purporting to establish liability is William Waldron's trial testimony on March 12, 2012. 48:7-20.[15] The only testimony given by Mr. Waldron regarding the trellises was the following at lines 19-20: "...the columns supporting the trellises had end drain and direct contact with masonry surfaces." This does not mention or in any way establish KMA's liability for the trellises.

d) Pool house

4. Plaintiff offered no proof of KMA's liability for the

---

[14] The following are all the items that are listed as having been repaired:
- Remediation of wine cellar            $2,382.19
- Remediation of trim work              $6,500.00
- Remediation of prior mason's work     $87,855.03
- Remediation of tile work              $8,712.00
- Remediation of siding, gutters & windows $69,770.00
[15] See plaintiffs' supporting memorandum

10

pool house either at trial or on this motion.   On this motion,
plaintiff's sole proof purporting to establish liability is
William Waldron's trial testimony on March 12, 2012, 48:3-20.[16]
Here is the only reference to the pool house in that portion of
Mr. Waldron's testimony:

> The siding on the pool house came right down and
> was in contact with the masonry, no flashing, no
> separation between the wood siding.   The siding was
> brought down and this happened in several places,
> where the end grain was in contact with the
> concrete.
>
> End grain is like a bunch of soda straws in wood.
> Much more wicking action, much more water wicks up
> end grain then edge grain.   That happened in the
> pool house siding.

KMA is not mentioned and the testimony does not support
a claim of KMA's liability for the pool house.   In addition,
plaintiffs asserted this claim against the pool contractor with
whom they settled.

e) Screened porch

5. Like the trellises and pool house, plaintiffs referred
to the same portion of Mr. Waldron's testimony to prove KMA's
liability for the screened porch.   Here is the pertinent
testimony:

> End grain is like a bunch of soda straws in wood.
> Much more wicking action, much more water wicks up
> end grain than edge grain.   That happened in the pool

---

[16] See plaintiffs' supporting memorandum page 10, paragraph (c)(iv).

house siding.  It happened to the porch siding, both inside and outside the porch.

As with the trellis and poolhouse, there is no mention of KMA and no proof of KMA's liability for the screen porch.

### f) Great room ceiling

6. Plaintiffs offered no proof of damages at trial or on this motion of any damages for the great room ceiling.  No dollar figure for damages is mentioned in plaintiffs' motion.[17]

### g) Stair tower

7. The stair tower claim was due to an error by the manufacturer Sunshine Rooms, not by KMA's design.  Plaintiff Joseph Uvino asserted in an email dated April 17, 2007[18] that the stair tower problem was due to an error by the manufacturer Sunshine Rooms and that he would pursue reimbursement from Sunshine Rooms.  This had nothing to do with KMA.

### 4. Delays

Plaintiffs claim that KMA is responsible for damages due to delays.  As with all the other claims, plaintiffs asserted that JBI was responsible for the same damages due to delay. Plaintiffs claim that "the schedule" called for completion in

---

[17] See Plaintiff's supporting memorandum page 9, paragraph (c)(vi).
[18] Exhibit I herein

12

December 2006.   However, KMA's contract[19] dated June 21, 2005 contemplated a 24 month project duration to June 21, 2007 and allowed for KMA's compensation to be adjusted if it went longer.[20] Therefore, plaintiffs agreed with KMA that the project would extend at least to June 21, 2007, not December 2006, and that KMA would receive additional compensation if it went longer.   There is no basis for the Uvinos claim that they were entitled to compensation from KMA because the project was not complete in December 2006.

The only proof of any specific delay caused by KMA was a 5 month delay in the electrical drawings.[21]   However, the proof showed that any delay in the electrical drawings had no impact on the completion of the project (Testimony of Dennis Kakol, page 238, lines 3 to 7).[22]

Plaintiffs allude to an eighth month delay because of "KMA's poor design and specification with respect to the reveals, along with its failure to meet its obligations to reject non-conforming work and review requests for payment."[23]   However, the testimony upon which plaintiffs base this assertion makes no mention of any particular period of delay.   The only proof of any specific delay caused by KMA was the 5 month period for

---

[19] Exhibit J herein
[20] Exhibit K paragraph 6.2 herein
[21] See plaintiffs' supporting memorandum, page 10.
[22] Exhibit L herein
[23] See plaintiffs' supporting memorandum, page 11.

electrical drawings which, as shown above, had no impact on completion.

## **CONCLUSION**

Plaintiffs made the same claims against JBI and KMA. The jury determined that the total value of those claims was $464,819. Plaintiffs should not be allowed to increase the total amount of their damages by alleging that the apportioned share of one defendant was too small.

The jury's verdict against KMA was more than adequate. The cost overrun claim, that plaintiffs should be awarded costs over $2.3 million, should have been rejected because plaintiffs were not entitled to any limit of construction costs and because Mr. Uvino admitted that the cost was $3.25 million, not $2.3 million. The change order claim, that plaintiffs only approved $27,310.00 in change orders, should have been rejected because plaintiffs excluded KMA from the financial aspects of the project including change orders and because Mrs. Uvino signed and approved a change order reflecting an increase by change order of $326,983.44, not $27,310.00. Plaintiff's claim for defects was compensated by the larger verdict assessed against JBI and plaintiffs did not prove liability or damages against KMA for the reasons described in detail in this memorandum. The delay claims should have been rejected because plaintiffs never proved 1) any entitlement to completion by any specific date or 2) any delay by KMA which affected completion.

Dated:     April 27, 2012
           New York, New York

                    GOGICK, BYRNE & O'NEILL, LLP
                    Attorneys for Defendant
                    KAEHLER MOORE ARCHITECTS


                    By: /s/ Michael J. Byrne
                         Michael J. Byrne
                    11 Broadway, Suite 1560
                    New York, NY 10004
                    (212) 422-9424

TO:

Jeremy D. Platek
Dreifuss Bonacci & Parker, LLP
520 White Plains Road, Suite 500
Tarrytown, New York 10591
Tel:  914-366-7337
Fax: 914-366-7339
E-mail:  jplatek@dbplawfirm.com

Wollmuth, Maher & Deutsch, LLP
500 Fifth Ave., Suite 1200
New York, New York 10110
Attn: William Dahill, Esq
Tel: 212-382-3300
Fax: 212-382-0050
Attorneys for Uvinos

David Lee Heller, Esq.
3334 Noyac Road
Sag Harbor, New York 11963
Tel: (631) 725-6340
Fax: (631) 725-6342
Attorneys for Wood & Colors, Inc.

Rabinowitz & Galina, Esq.
94 Willis Avenue
Mineola, New York 11501
Tel: (516) 739-8222
Fax: (516) 739-8225
Attorneys for Pools by Guillo, Inc.

16

Marshall M. Stern, Esq.
17 Cardiff Court
Huntington Sta., New York 11746
Tel: 631-427-0101
Fax: 631-427-0196
Attorneys for Valdespino Custom Builders
and J.L. Masonry & Construction, Inc.

Michael T. Sucher, Esq.
26 Court St., Suite 2412
Brooklyn, New York 11242
Tel: (718) 522-1995
Fax: (718) 797-3174
Attorneys for F. Schneider Contracting

Mark A. Healy, Esq.
Morris Duffy Alonso & Faley
2 Rector Street – 22nd Floor
New York, NY 10006
Tel: (212) 766-1888
Fax: (212) 766-3252
Attorneys for Third party &
Counterclaim defendant, Hampton Contracting, Inc.

## <u>Exhibit List</u>

Exhibit A – Uvino Trial Exhibit 152A

Exhibit B – Uvino Trial Exhibit 115

Exhibit C – Uvino Trial Exhibit 164

Exhibit D – Kaehler Moore Trial Exhibit D

Exhibit E – Kaehler Moore Trial Exhibit J

Exhibit F – Kaehler Moore Trial Exhibit OO

Exhibit G – JBI Plaintiff – J. Barrows Defendant Trial Exhibit PL – 92

Exhibit H – Kaehler Moore Trial Exhibit C

Exhibit I – Kaehler Moore Trial Exhibit Z

Exhibit J – Kaehler Moore Trial Exhibit D (refer to Exhibit D)

Exhibit K – Kaehler Moore Trail Exhibit D – paragraph 6.2 (refer to Exhibit D)

Exhibit L – Dennis Kakol Testimony